**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**SUSAN KENT as PRESIDENT of**
**THE NEW YORK STATE PUBLIC EMPLOYEES**
**FEDERATION, AFL-CIO, NEW YORK STATE**
**PUBLIC EMPLOYEES FEDERATION, AFL-CIO,**
**and KAREN DANISH, JAMES CARR, ROBERT H.**
**HARMS, JR., KENNETH R. HUNTER, MARY REID,**
**CALVIN THAYER, and RAYMOND FERRARO**
**on Behalf of Themselves and All Others Similarly**
**Situated,**

                              **Plaintiffs,**

        **vs.**                                              **1:11-CV-1533**
                                                              **(MAD/CRH)**


**THE STATE OF NEW YORK, ANDREW M. CUOMO,**
**as Governor of the State of New York,  NEW YORK**
**STATE CIVIL SERVICE DEPARTMENT, PATRICIA A.**
**HITE, in her official capacity as Acting Commissioner,**
**New York State Civil Service Department, NEW YORK**
**STATE CIVIL SERVICE COMMISSION, CAROLINE W.**
**AHL and J. DENNIS HANRAHAN, in their official capacities**
**as Commissioners of the New York State Civil Service**
**Commission, ROBERT L. MEGNA, in his official capacity as**
**Director of the New York State Division of the Budget, and**
**THOMAS P. DiNAPOLI, in his official capacity as Comptroller**
**of the State of New York, and NEW YORK STATE AND LOCAL**
**RETIREMENT SYSTEM, NEW YORK STATE GOVERNOR'S**
**OFFICE OF EMPLOYEE RELATIONS, and GARY JOHNSON,**
**in his official capacity as Executive Director of the Governor's**
**Office of Employee Relations,**

                              **Defendants.**
_____

**APPEARANCES:**                          **OF COUNSEL:**

New York State Public Employees              Rita J. Verga, Esq.
Federation, AFL-CIO
P.O. Box 12414
1168-70 Troy-Schenectady Road
Albany, New York 12212-3414
*Attorneys for Plaintiffs*

Public Employees Federation, AFL-CIO John F. Kershko, Esq.
Office of General Counsel Lisa M. King, Esq.
1168-70 Troy-Schenectady Road
Albany, New York 12110

ERIC T. SCHNEIDERMAN Charles J. Quackenbush, Esq.
Attorney General of the State of New York Asst. Attorney General
The Capitol
Albany, New York 12224
*Attorney for Defendants*

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### INTRODUCTION

Plaintiffs commenced the within action alleging that defendants unilaterally increased the percentage of contributions that plaintiffs, retired employees, are required to pay for health insurance benefits in retirement and thereby violated the Contracts Clause and Due Process Clause of the United States Constitution and state law and impaired plaintiffs' contractual rights under the terms of their Collective Bargaining Agreement, and violated state law. Plaintiffs seek injunctive relief, declaratory judgments and monetary damages. Presently before the Court is defendants' motion to dismiss plaintiffs' complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). (Dkt. No. 11). Plaintiffs have opposed the motion.[1] (Dkt. No. 16).

### BACKGROUND[2]

---

[1] On December 29, 2011, Chief United States District Judge Gary L. Sharpe issued an Order pursuant to General Order #12 of the United States District Court for the Northern District of New York. The within action was deemed "related" to nine other actions filed in this Court. (Dkt. No. 4). Defendants filed the same motion to dismiss in each action. Each set of plaintiffs filed separate briefs in opposition to the motion. While the matters involve the same defendants and overlapping claims, the Court finds that they are sufficiently distinguishable in terms of the class of plaintiffs and facts to warrant separate Memorandum-Decisions and Orders.

[2] The background information is taken from the complaint and is presumed true for the purposes of this motion only. This does not constitute a factual finding by the Court.

The New York State Public Employees Federation, AFL-CIO ("PEF") is the collective bargaining representative on behalf of New York State employees serving in positions in the Professional, Scientific and Technical Services Unit ("PS&T Unit") of the State government, many of whom are enrolled in and receive health benefits through the statewide New York State Health Insurance Program ("NYSHIP"). Plaintiff Susan Kent is President of PEF and brings this action on behalf of retired employees who were within the PS&T Unit at the time of their retirement, many of who receive benefits through NYSHIP. Plaintiffs Karen Danish, James Carr, Robert H. Harms, Jr., Kenneth R. Hunter, Mary Reid, Calvin Thayer and Raymond Ferraro are former State employees and former members of PEF now retired and enrolled in and receiving either individual or dependent coverage health benefits through NYSHIP. During the relevant time, defendant Patricia Hite ("Hite") was Acting Commissioner of the Civil Service Department and Acting President of the Civil Service Commission. Defendants Caroline W. Ahl ("Ahl") and J. Dennis Hanrahan ("Hanrahan") were members of the Civil Service Commission. Defendant Robert Megna ("Megna") was the Director of the New York State Division of the Budget. Defendant Thomas P. DiNapoli ("DiNapoli") was the Comptroller of the State of New York responsible for the administration of the New York State and Local Retirement System. The New York State and Local Retirement System is responsible for making monthly pension payments to eligible retired State employees less any deductions for the payment of retiree health insurance. Defendant Gary Johnson ("Johnson") was the Executive Director of the Governor's Office of Employee Relations.

Article XI of the New York State Civil Service Law ("CSL") provides for a statewide health insurance plan for eligible State employees and retired State employees known as NYSHIP or "Empire Plan." New York Civil Service Law § 167(1) assigns the State contribution rate

towards the cost of health insurance premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP.  Prior to 1983, the State was required to pay the full cost of premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP.  Chapter 14 of the Laws of 1983 amended Civil Service Law § 167(1)(a) to limit the amount that the State was required to pay towards the cost of premium or subscription charges for the coverage of State employees and retired State employees enrolled in NYSHIP, by providing that the State was required to contribute only ninety percent (90 %) of the cost of such premium or subscription charges for the coverage of State employees and retired State employees retiring on or after January 1, 1983.  The State would continue to contribute seventy-five percent (75 %) for dependent coverage for State employees and retired State employees.

The Governor's Program Bill Memorandum regarding the 1983 amendment provided that "[t]he State and the employee organizations representing State workers have agreed to a reduction of the State's contribution for the premium or subscription charges for employees enrolled in the statewide health insurance plan."

The Division of the Budget's Report on Bills also acknowledged that  "[t]his measure provides the necessary authorization to implement negotiated agreements between the State and the employee organizations representing State employees.  This action is appropriate in view of the 'good faith' efforts of the State and the employee organizations to reach agreement on this critical issue."

Between 1983 and 2011, Civil Service Law § 167(8) provided, *inter alia*,

> [n]otwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible

4

employees covered by such agreement may be increased pursuant to the terms of such agreement.

As a result of negotiations, PEF and the State of New York executed Collective Bargaining Agreements ("CBAs") effective April 1, 1982 through March 31, 2011. Article 9 of the 2007-2011 CBA is entitled "Health Insurance."[3] Section 9.1 of the CBA provides that "[t]he State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on April 1, 2007 with the State health insurance carriers unless specifically modified or replaced pursuant to this agreement." Cplt. at ¶ 66.

Article Section 9.2(h) of the 2007-2011 PEF CBA provides that [t]he State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of development coverage including drug coverage provided under the Empire Plan. *Id.* at ¶ 67.

Article 9.13(a) of the 2007-2011 PEF CBA provides that "[e]mployees on the payroll and covered by the State Health Insurance Program have the right to retain health insurance coverage after retirement, upon the completion of ten years of State service." *Id.* at ¶ 68.

The same, or substantially similar, contract rights are contained in and consistently maintained throughout the prior (from 1982 through 2007) collectively negotiated agreements.[4]

On August 17, 2011, the legislature passed Chapter 491 of the Laws of 2011 (Chapter 491). Chapter 491 amended § 167(8) and replaced the word "increased" with the word "modified." The amendment further provided as follows:

> The president [of the Civil Service Commission], with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision.

---

[3] The CBA is not part of the record herein.

[4] These agreements are not part of the record herein.

5

On September 21, 2011, defendant Hite requested defendant Megna's approval to extend the modified contribution rates to PEF retirees. On September 22, 2011, defendant Megna approved the extension of modified contribution rates. On October 1, 2011, defendants implemented new reduced State contribution rates, which resulted in a two percent (2 %) reduction in the State contribution rates for Individual coverage, from ninety percent (90 %) to eighty-eight percent (88%), and Dependent Coverage, from seventy-five percent (75 %) to seventy-three percent (73%), for enrolled State retirees, including PEF retirees, who retired on or after January 1, 1983.

Defendants approved and filed emergency regulations to implement the reduction in State contribution rates effective October 1, 2011, and a further reduction in State contribution rates for employees retiring from State service on or after January 1, 2012, including PEF employees. These reductions  will result in a six percent (6 %) reduction in the State contribution rates for individual coverage from ninety percent (90 %) to eight-four percent (84 %) and dependent coverage from seventy-five percent (75 %) to sixty-nine percent (69 %) for those retirees retiring from a title Salary Grade 10 or above, from a position equated to Salary Grade 10 or above, or for those who retire from a position which is not allocated or equated to a Salary Grade, based upon the wages or salary paid as compared to the salary schedule set forth in the CSEA Agreement.

On December 28, 2011, plaintiffs filed a complaint (Dkt. No. 1) asserting causes of action for impairment of contract, violation of due process, violation of civil rights pursuant to 42 U.S.C. § 1983 and breach of contract. Plaintiffs also claim that Civil Service Law § 167(8) is unconstitutional as applied and assert that defendants Hite and Megna lacked authority under § 167(8) to approve and implement the reduction in State contribution rates. Plaintiffs seek

judgment pursuant to Article 78 of the New York Civil Practice Laws and Rules.  Plaintiffs

commenced this action against the individual defendants in their official capacities only.

## DISCUSSION

### Standard on a Motion to Dismiss under 12(b)(1)

In contemplating a motion to dismiss for lack of subject matter jurisdiction pursuant to

Rule 12(b)(1), the Court must "accept as true all material factual allegations in the complaint[.]"

*Atl. Mut. Ins. Co. v. Balfour MacLaine Int' Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992).  The court may

consider evidence outside the pleadings, *e.g.*, affidavit(s), documents or otherwise competent

evidence.  *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986); *Antares*

*Aircraft v. Fed. Rep. of Nigeria*, 948 F.2d 90, 96 (2d Cir. 1991).  "The standards for considering a

motion to dismiss under Rules 12(b)(1) and 12(b)(6) are substantively identical."  *Lerner v. Fleet*

*Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

Defendants move for dismissal pursuant to Fed. R. Civ. P. 12(b)(1) arguing that the

Eleventh Amendment precludes the Court from obtaining subject matter jurisdiction over the

following claims: (1) all of plaintiffs' claims against the State of New York and its agencies; (2)

plaintiffs' claims against defendants in their official capacities; and (3) plaintiffs' Article 78 cause

of action.  Defendants also allege that the principals of the *Younger* doctrine require abstention in

this matter.

## I.      Eleventh Amendment

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of

the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

*State Emp. Bargaining Agent Coalition v. Rowland*, 494 F.3d 71, 95 (2d Cir. 2007) (citing U.S.

Const. amend. XI).  The Eleventh Amendment bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90–100 (1984); *see also Huminski v. Corsones*, 386 F.3d 116, 133 (2d Cir. 2004) (citation omitted). Although the plaintiff generally bears the burden of proving subject matter jurisdiction, the entity claiming Eleventh Amendment immunity bears the burden to prove such.  *See Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006).

Section 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws."  *Rizzo v. Goode*, 423 U.S. 362, 370–71 (1976) (quoting 42 U.S.C. § 1983).  It is well-settled that states are not "persons" under section 1983 and, therefore, Eleventh Amendment immunity is not abrogated by that statute.  *See Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989).

**A.**   **Federal Claims against State of New York, New York State Civil Service Department, New York State Civil Service Commission, New York State and Local Retirement System and New York State Governor's Office of Employee Relations**

Regardless of the type of relief sought, the Eleventh Amendment bars this Court from assuming jurisdiction over plaintiffs' claims asserted against the State of New York and its agencies.  When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining lawsuits against them "regardless of the nature of the relief sought." *Pennhurst*, 465 U.S. at 100.  In this case, the State has neither  waived its immunity, nor has Congress exercised its power to override Eleventh Amendment immunity.  Accordingly, plaintiffs' claims against the State of New York, New York State Civil Service Department, New York State Civil Service Commission, New York State and Local Retirement System, and New York State Governor's Office of Employee Relations are dismissed.  *See McGinty v. New York,*

251 F.3d 84, 100 (2d Cir. 2001) (dismissing the claims against the Retirement System for lack of subject matter jurisdiction based upon the Eleventh Amendment).

**B.    Federal Claims Against State Officials in their Official Capacity**

Plaintiffs also assert claims against defendants Cuomo, Hite, Ahl, Hanrahan, Megna, DiNapoli and Johnson in their official capacities.  Eleventh Amendment immunity extends to state officials sued in their official capacities for retrospective relief.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Actions for damages against a state official in his or her official capacity are essentially actions against the state, and will be barred by the Eleventh Amendment unless: (1) Congress has abrogated immunity, (2) the state has consented to suit, or (3) the *Ex parte Young* doctrine applies.  *See Will*, 491 U.S. at 71.  In this matter, the issues presented before this Court involve the third exception.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court established an exception to state sovereign immunity in federal actions where an individual brings an action seeking injunctive relief against a state official for an ongoing violation of law or the Constitution.  This doctrine provides "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment."  *Ford v. Reynolds*, 316 F.3d 351, 354-55 (2d Cir. 2003).  Under the doctrine, a suit may proceed against a state official in his or her official capacity, notwithstanding the Eleventh Amendment, when a plaintiff,  "(a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective."  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir. 2007) (quotations and citations omitted); *see also Santiago v. New York State Dep't of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991) (holding that such claims,

9

however, cannot be brought directly against the state, or a state agency, but only against state

officials in their official capacities).

In *Edelman v. Jordan*, 415 U.S. 651, 653 (1974), the Supreme Court expanded upon *Ex*

*Parte Young* and held that even when a plaintiff's requested relief is styled as an injunction

against a state official, if "the action is in essence one for recovery of money from the state, the

state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from

suit even though individual officials are nominal defendants."  Retroactive relief is that relief

"measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of

the defendant state officials" regardless of how the relief is fashioned.  *Id*. at 668.  "Prospective

relief includes injunctive relief that bars a state actor from engaging in certain unconstitutional

acts or abates ongoing constitutional violations as well as the 'payment of state funds as a

necessary consequence of compliance in the future with a substantive federal question

determination' *Id*.  The "general criterion for determining when a suit is in fact against the

sovereign is the effect of the relief sought, namely, would the relief abate an ongoing violation or

prevent a threatened future violation of federal law?"  *Id*.  In *Edelman*, the majority concluded:

> It is one thing to tell [a state official] that he must comply with the
> federal standards for the future if the state is to have the benefit of
> federal funds in the program he administers. It is quite another thing
> to order the [state official] to use state funds to make reparation for the
> past. The latter would appear to us to fall afoul of the Eleventh
> Amendment if that basic constitutional provision is to be conceived of
> as having any force.

*Id*. at 695 (quotation omitted).

In order to determine whether the *Ex parte Young* exception allows plaintiffs' suit against

the officials, this Court must first determine whether the complaint alleges an ongoing violation

of federal law and second, whether plaintiffs seek relief properly characterized as prospective.

*See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).  "[T]o successfully

avoid the Eleventh Amendment bar, a plaintiff must prove that a defendant's violation of federal

law is of an ongoing nature as opposed to a case 'in which federal law has been violated at one

time or another over a period of time in the past.'"  *Papasan v. Allain*, 478 U.S. 265, 277–78

(1986) (quotation omitted).  The inquiry for determining whether an "ongoing violation" exists is,

"does the enforcement of the law amount to a continuous violation of plaintiffs constitutional

rights or a single act that continues to have negative consequences for plaintiffs."  *New Jersey*

*Educ. Ass'n v. New Jersey*, No. 11-5024, 2012 WL 715284, at *4 (D.N.J. Mar. 5, 2012).

　　　Defendants argue that Eleventh Amendment immunity extends to state officials but fail to

address the *Ex Parte Young* exception.  Here, plaintiffs argue that a "straightforward inquiry"

reveals that plaintiffs have alleged a violation of federal law.  Plaintiffs allege that defendant

officials are engaged in enforcing Chapter 491 of the Laws of 2011, a law that is contrary to

federal law because it impairs their rights under Article I, Section 10 of the U.S. Constitution.

Plaintiffs also allege that officials are implementing a state statute that violates federal due

process.  An allegation that state officials are enforcing a law in contravention of controlling

federal law is sufficient to allege an ongoing violation of federal law for the purposes of *Ex parte*

*Young*.  *See Chester Bross Const. Co. v. Schneider*, No. 12-3159,  2012 WL 3292849, at *6 (C.D.

Ill. Aug. 10, 2012) (citing *Verizon Md., Inc.*, 535 U.S. at 645).  Thus, plaintiffs have satisfied the

first prong of *Ex Parte Young*.

　　　With respect to nature of the relief sought, plaintiffs' "WHEREFORE" clause contains the

following requests:

> (a)　　　Declaring that State defendants' actions imposing,
> implementing and administratively extending reduced State
> contribution rates for health insurance to plaintiffs, and all
> others similarly situated are unconstitutional in violation of the

Contract Clause of Article I of Section 10 of the United States Constitution, and permanently enjoining State defendants from implementing same;

(b)     Declaring Chapter 491 of the Laws of 2011 unconstitutional, as applied under Civil Service Law § 167(8), to the extent that State defendants administratively extended and implemented reduced State contribution rates to retired State employees which impair the contract rights of plaintiffs and all others similarly situated, to continue health benefits;

(c)     Declaring that State defendants' actions in imposing, administratively approving, extending and implementing increases in the contribution rates that retired State employees are required to pay for health insurance benefits in retirement are unlawful and unauthorized pursuant to New York Civil Service Law § 167(8), in excess of jurisdiction, and null and void;[5]

(d)     vacating and annulling the State defendants' actions in administratively approving, extending and implementing increases in the contribution rates that retired State employees are required to pay for health insurance benefits in retirement as unlawful, in excess of jurisdiction, arbitrary, capricious and an abuse of discretion;

(e)     enjoining, prohibiting and restraining defendants DiNapoli and the Retirement System from making any deductions from the monthly pension payments of retired State employees, including plaintiffs, and all similarly situated, or passing along any additional costs or charges as a result of the reduced State contribution rates implemented by State defendants challenged herein;

(f)     directing State defendants to reimburse and make whole plaintiffs, and all similarly situated, for any and all additional payments or deductions to pension payments, made as a result of the reduced State contribution rates implemented by State defendants challenged herein;

(g)     awarding plaintiffs' reasonable attorneys' fees costs and disbursements of this action.

---

[5] *Ex Parte Young* does not extend to state-law claims asserted against state officers. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984). Whether this Court maintains subject matter jurisdiction over plaintiffs' state-law claims will be discussed *infra*.

12

*See* Cplt. (Dkt. No. 1).  The Court will address each request for relief in turn.

### 1.      **Monetary Relief**

Plaintiffs claim that the Eleventh Amendment does not bar ancillary monetary relief.

While not cited by plaintiffs herein, plaintiffs in the related actions cite to *Milliken v. Bradley*,

433 U.S. 267 (1977) as support for their claims for monetary damages.  In the *Milliken* case, the

district court ordered implementation of student assignment plans and educational components in

the areas of reading, in-service teacher training, testing and counseling to effectuate

desegregation.  The Supreme Court discussed the "prospective-compliance" exception which

permits federal courts to enjoin state officials to conform their conduct to the requirements of

federal law notwithstanding a direct and substantial impact on the state treasury.  *Id*. at 289.  In

*Milliken*, there was no money award in favor of the respondent or any member of his class.  The

Court explained that the case "simply does not involve individual citizens' conducting a raid on

the state treasury for an accrued monetary liability."  *Id*.  Instead, the decree required state

officials to eliminate a segregated school system.  *Id.*  The Court reasoned that

> [t]hese programs were not, and as a practical matter could not be,
> intended to wipe the slate clean by one bold stroke, as could a
> retroactive award of money in *Edelman*.  Rather, by the nature of the
> antecedent violation, which on this record caused significant
> deficiencies in communications skills — reading and speaking — the
> victims of Detroit's *de jure* segregated system will continue to
> experience the effects of segregation until such future time as the
> remedial programs can help dissipate the continuing effects of past
> misconduct.  Reading and speech deficiencies cannot be eliminated by
> judicial fiat; they will require time, patience, and the skills of specially
> trained teachers.  That the programs are also 'compensatory' in nature
> does not change the fact that they are part of a plan that operates
> prospectively to bring about the delayed benefits of a unitary school
> system.  We therefore hold that such prospective relief is not barred
> by the Eleventh Amendment.

*Id*. at 290.

The facts and relief sought in *Milliken* are clearly distinguishable from those at hand and thus, the Court is not persuaded that the holding supports plaintiffs' claims herein. To the extent plaintiffs seek monetary relief against defendants acting in their official capacity as agents of the State, such claims are barred by the Eleventh Amendment. *See Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009) (holding that "in a suit against state officials in their official capacities, monetary relief (unlike prospective injunctive relief) is generally barred by the Eleventh Amendment") (citation omitted).

### 2.    Injunctive Relief

Plaintiffs also seek an order permanently enjoining defendants from implementing the reduced State contribution rates, arguing that the continued effectuation of Chapter 491 will have an impact upon plaintiffs/retirees who are receiving only a portion of their former income. As discussed *supra*, defendants did not address *Ex Parte Young* or the inapplicability/applicability of the doctrine herein. Defendants do not claim that plaintiffs seek improper injunctive relief that is retrospective or designed to compensate for a past violation of federal law. Moreover, defendants did not present any argument regarding the impact such an injunction would have on the state treasury. To the extent that plaintiffs seek prospective injunctive relief against defendants, plaintiffs have sufficiently alleged such claims and thus, based upon the purview of *Ex Parte Young,* dismissal is not warranted. *Finch v. New York State Office of Children & Family Serv.*, 499 F. Supp. 2d 521, 538 (S.D.N.Y. 2007) (citation omitted).

### 3.    Declaratory Judgment

Declaratory judgments form part of the injunctive relief allowed for under *Ex Parte Young*. *See Tigrett v. Cooper*, No. 10-2724, 2012 WL 691892, at *6 (W.D. Tenn. Mar. 2, 2012). However, declaratory relief is not permitted under *Ex Parte Young* when it would serve to declare

only past actions in violation of federal law: retroactive declaratory relief cannot be properly characterized as prospective.  *Id.*; *Green v. Mansour*, 474 U.S. 64, 74 (1985) (holding that the Eleventh Amendment bars retrospective declaratory relief against state officials); *New Jersey Educ. Ass'n*, 2012 WL 715284, at *5 (holding that a request for a declaratory judgment holding that portions of a statute are unconstitutional is "nothing more than an indirect way of forcing the State to abide by its obligations as they existed before the enactment of the Act and therefore, essentially a request for specific performance" and, thus, not permitted).

In this matter, to the extent plaintiffs seek declaratory relief regarding the State defendants' past conduct, such claims must be dismissed because the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past." *Finch*, 499 F. Supp. 2d at 538 (citing *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993)); *see also Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F. 3d 835, 847-48 (9th Cir. 2002) (noting that retrospective declaratory relief would declare that the State Defendants committed constitutional violations in the past; prospective relief would declare that likely future actions are unconstitutional).

However, plaintiffs' request for an order declaring Chapter 491 of the Laws of 2011 unconstitutional is prospective.  *See Verizon Md.*, 535 U.S. at 645 ("The prayer for injunctive relief – that state officials be restrained from enforcing an order in contravention of controlling federal law – clearly satisfies our 'straightforward inquiry'").  As to this request, to the extent that plaintiffs seek prospective declaratory relief, that relief is not barred by the Eleventh Amendment.

To summarize, the Eleventh Amendment deprives this Court of jurisdiction over all of plaintiffs' claims against the State of New York, New York State Civil Service Department, New

York State Civil Service Commission, New York State and Local Retirement System,  New York

State Governor's Office of Employee Relations, and plaintiffs' claims for monetary damages

against defendants in their official capacities.  Jurisdiction remains over plaintiffs' claims for

prospective injunctive and declaratory relief and against defendants Cuomo, Hite, Ahl, Hanrahan,

Megna,  DiNapoli and Johnson in their official capacities.

### C.    New York State Law Contractual Impairment Claims Against Defendants in their Official Capacities

Defendants also move for dismissal of plaintiffs' state law contractual impairment claim

asserted against defendants in their official capacity.  The jurisdiction of a federal court to

entertain supplemental state law claims under 28 U.S.C § 1367 does not override Eleventh

Amendment immunity.  "Supplemental jurisdiction under 28 U.S.C. § 1367(a) does not constitute

a congressional abrogation of the Eleventh Amendment granting district courts the power to

adjudicate pendent state law claims."  *Nunez v. Cuomo*, No. 11-CV-3457, 2012 WL 3241260, at

*20 (E.D.N.Y. Aug. 7, 2012) (citations omitted).  The Eleventh Amendment bars suits in federal

courts seeking relief, whether prospective or retroactive, against state officials for their alleged

violations of state law.  *See Pennhurst*, 465 U.S. 89, 106.  The *Ex parte Young* doctrine is

inapplicable where the officials are alleged to have violated state law.  *Local 851 of Int'l Bhd. of

Teamsters v. Thyssen Haniel Logistics, Inc*., 90 F. Supp. 2d 237, 247 (E.D.N.Y. 2000) (citing

*Pennhurst*, 465 U.S. at 104-06).  However, the Eleventh Amendment does not bar a suit when an

official has allegedly acted entirely outside her state-delegated authority in a manner that violates

federal law.  *See Florida Dep't of State v. Treasure Salvors, Inc*., 458 U.S. 670, 696-697 (1982);

*Pennhurst*, 465 U.S. at 101, n.11.  In *Treasure Salvors, Inc*., the Supreme Court held as follows:

> [A]ction of an officer of the sovereign (be it holding, taking or
> otherwise legally affecting the plaintiff's property) that is beyond the
> officer's statutory authority is not action of the sovereign, a suit for

> specific relief against the officer is not barred by the Eleventh Amendment.   This conclusion follows inevitably from Ex parte Young.  If conduct of a state officer taken pursuant to an unconstitutional state statute is deemed to be unauthorized and may be challenged in federal court, conduct undertaken without any authority whatever is also not entitled to Eleventh Amendment immunity.

*Id*. at 696.  A state officer acts *ultra vires* when he acts beyond the scope of his statutory authority, or pursuant to authority deemed to be unconstitutional.  *Id*.

In this matter, plaintiffs must establish that defendants acted "without any authority whatsoever" under state law.  *Sherwin-Williams Co. v. Crotty*, 334 F. Supp. 2d 187, 196 (N.D.N.Y. 2004).  Plaintiffs have pled that the state claims arise out of *ultra vires* acts by defendants Hite and Megna:

> Upon information and belief, defendant Hite, in her capacity as "Acting Commissioner" of the Civil Service Department and "Acting President" of the Civil Service Commission, has not filed an oath of office as Commissioner or President, respectively.

> Upon information and belief, defendant Hite, in her capacity as "Acting President" of the Civil Service Commission, has not attended or voted at any official meeting of the Civil Service Commission.

> As a result of Hite's lack of authority, defendant Megna lacked authority on September 22, 2011, to approve the extension of modified State contribution rates to retired State employees and unrepresented State employees pursuant to Civil Service Law § 167(8).

> Defendant Hite lack authority pursuant to Civil Service Law § 167(8) to approve a resolution on September 27, 2011, adopting regulations at 4 NYCRR §§ 73.3(b) and 73.12, to extend modified State contribution rates to retired State employees and unrepresented State employees.

> As a result of defendant Hite's lack of authority pursuant to Civil Service Law § 167(8), defendant Civil Service Department lacked authority to file emergency regulations with the New York Secretary of State's office on September 27, 2011, and published in the State Register on October 14, 2011, to extend modified State contribution rates to retired State employees and unrepresented State employees.

Am. Cplt. at ¶¶ 144-150.

Plaintiffs also allege that "defendants' unilateral and retroactive imposition of reduced State contribution rates for retirees is not based upon an extension of the terms contained in the CSEA Agreement, and is therefore not authorized pursuant to Civil Service Law § 167(8)" and *ultra vires*. *Id.* at ¶¶ 190, 193. At this stage of the litigation, plaintiffs have sufficiently pled the *ultra vires* exception to the Eleventh Amendment and, thus, defendants' motion to dismiss plaintiffs' state-law claims, on this basis, is denied.

**D.    Federal Claims Against Defendants in their Individual Capacities**

Plaintiffs have not asserted any claims against defendants Cuomo, Hite, Ahl, Hanrahan, Megna, DiNapoli or Johnson, individually. However, plaintiffs argue that, "should the Court find that the PEF plaintiffs' monetary relief request is not ancillary to the requested injunctive relief, the PEF plaintiffs request to amend their complaint to seek such damages against the defendants in their individual capacities." *See* Dkt. No. 16, at p. 8. The Court construes this argument as a motion for leave to file an amended complaint.

Suits against state officials in their personal capacity are not barred by the Eleventh Amendment, even for actions required by their official duties, *Hafer v. Melo*, 502 U.S. 21, 27–28 (1991) (holding that state officials may be personally liable for actions taken in their official capacity);  however, such actions may be subject to dismissal on other grounds. Here, defendants argue that legislative immunity would divest this Court of jurisdiction over any claims against the individual defendants in their individual capacities. However, legislative immunity is a personal defense that may be asserted in the context of a challenge under Rule 12(b)(6) and is not proper for review as a jurisdictional bar under Rule 12(b)(1). *See State Emp.*, 494 F.3d at 82 n.4.

Accordingly, that portion of defendants' motion, and plaintiffs' request to amend, will be discussed *infra*.

## II.      Judgment Pursuant to Article 78 of the New York Civil Practice Laws and Rules

Defendants move to dismiss plaintiffs' claims under N.Y.C.P.L.R. Article 78, arguing that, to the extent that plaintiffs are challenging official interpretations of CSL § 167(8), defendants' promulgations or regulations, and the propriety of the Civil Service President's appointment, New York State has not empowered the federal courts to entertain these actions. Plaintiffs contend that the Article 78 claims are predicated on the federal constitutional claims and derive from a common nucleus of operative fact.  Therefore, plaintiffs argue that this Court has the discretion to exercise pendent jurisdiction over these claims pursuant to 28 U.S.C. § 1367.

Section 1367 provides that a court "may decline to exercise supplemental jurisdiction" if there are "compelling reasons for declining jurisdiction."  28 U.S.C. § 1367(c), (c)(4).  "There does not appear to be a consensus in this Circuit as to whether courts may, in their discretion, hear Article 78 claims under the rubric of supplemental jurisdiction."  *Minima v. New York City Emp. Retirement Sys.*, No. 11-CV-2191, 2012 WL 4049822, 8 (E.D.N.Y. Aug. 17, 2012) (citing *Clear Wireless L.L.C. v. Bldg. Dep't of Lynbrook*, No. 10-CV-5055, 2012 WL 826749, at *9 (E.D.N.Y. Mar. 8, 2012) (noting that "it is doubtful . . . that claims under Article 78 are even amenable to a district court's supplemental jurisdiction"); *see also Morningside Supermarket Corp. v. New York State Dep't of Health*, 432 F. Supp. 2d 334, 346 (S.D.N.Y. 2006) (refusing to exercise jurisdiction over the plaintiffs Article 78 cause of action for an order annulling a Department of Health ruling for an error of law, and as arbitrary and capricious).  The "overwhelming majority of district courts confronted with the question . . . have found that they are without power to do so or have declined to do so."  *Clear Wireless*, 2012 WL 826749, at *9 (quoting *Coastal Commc'ns Serv.,*

*Inc. v. City of New York*, 658 F. Supp. 2d 425, 459 (E.D.N.Y. 2009)); *see also DeJesus v. City of New York*, No. ID Civ. 9400, 2012 WL 569176, at *4 (S.D.N.Y. Feb. 21, 2012) (holding that Article 78 is a procedure, not a cause of action).

However, "[e]ven assuming that a federal district court could properly exercise supplemental jurisdiction over an Article 78 claim, the court has 'discretion under 28 U.S.C. § 1367(c) to determine whether to hear th[ose] claims.'" *Morningside Supermarket Corp.*, 432 F. Supp. 2d at 346 (citing *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F. 3d 296, 309 (2d Cir. 2004)).

In *Morningside*, the court held that

> [f]ederal courts in New York agree that "Article 78 proceedings were designed for the state courts, and are best suited to adjudication there." Moreover, "state law does not permit [these] proceedings to be brought in federal court." These are compelling reasons to decline supplemental jurisdiction over Morningside's third cause of action, and there is nothing exceptional about Morningside's claim that would justify deviation from the well-reasoned and essentially unanimous position of New York district courts on this issue.

*Id.* (internal citations omitted).

Here, plaintiffs seek to have this Court "annul" defendants' actions pursuant to Article 78. The caselaw on this issue is decidedly in defendants' favor. While it is true that the federal claims and state-law issues arise out of the same operative set of facts, this Court declines to exercise supplemental jurisdiction over plaintiffs' Article 78 claim because to do so would require this Court to interpret state law before the New York State courts have an opportunity to analyze and resolve the issues. *See Support Ministries For Persons with AIDS, Inc. v. Vill. of Waterford, N.Y.*, 799 F. Supp. 272, 280 (N.D.N.Y. 1992) (holding that "there is no reason for th[e] court to embroil itself in a dispute between the State and a local government and to make this novel and potentially extremely significant interpretation of state law"). The Court has reviewed the

holding in *Yonkers Racing Corp. v. City of Yonkers*, 858 F. 2d 855 (2d Cir. 1988), a case cited by the plaintiffs in related cases and finds the holding unpersuasive based upon the facts herein.  In *Yonkers*, the Second Circuit noted that the case "presented exceptional circumstances" and opted to exercise jurisdiction over the plaintiffs' Article 78 claim.[6]  The *Yonkers* holding has been cited as the exception, not the rule.  *See Coastal Commc'ns*, 658 F. Supp. 2d at 459; *see also Kelly v. City of Mount Vernon*, 344 F. Supp. 2d 395, 407 (S.D.N.Y. 2004).

Here, plaintiffs have not persuaded this Court that this case presents such extreme facts.  Based upon the circumstances presented herein, the Court finds that this specific, state-created civil action should not be brought in federal court.  Accordingly, the Court follows the "essentially unanimous position of the New York district Courts" and declines to exercise jurisdiction over plaintiffs' state-law claims brought under Article 78.  *See Morningside*, 432 F. Supp. 2d at 347.

## III.   *Younger* **Doctrine**

A federal court's obligation to adjudicate claims within its jurisdiction is "virtually unflagging."  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 359 (1989) (holding that "abstention remains the exception, not the rule").  The *Younger* doctrine "espouse[s] the policy that a federal court should not interfere with a pending state judicial proceeding in which important state interests are at stake."  *Wisoff v. City of Schenectady*, No. 07-CV-34, 2009 WL 606139, at *6 (N.D.N.Y. Mar. 9, 2009) (citing, *inter alia, Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431–432 (1982)).  In the Second Circuit, courts applying *Younger* abstention "must determine (1) whether there is an ongoing state

---

[6] In *Cartegena v. City of New York*, 257 F. Supp. 2d 708, 709 (S.D.N.Y. 2003), another case cited by the plaintiffs in the related action, the district court exercised jurisdiction over the Article 78 claims only after the parties withdrew their jurisdictional objections and consented.

proceeding; (2) whether an important state interest is involved; and (3) whether the federal

plaintiff has an adequate opportunity for judicial review of his constitutional claims during or

after the proceeding." *Univ. Club v. City of New York*, 842 F. 2d 37, 40 (2d Cir. 1988) (internal

citations omitted).

Generally, *Younger* is not applied against those not party to the pending state proceedings.

*Hindu Temple Soc'y of N. Am. v. Supreme Court of State of New York,* 335 F. Supp. 2d 369, 375

(E.D.N.Y. 2004). However, the Second Circuit has held that, "[i]n certain circumstances,

*Younger* may apply to the claims of third-parties who are not directly involved in any pending

state proceeding." *Spargo v. N.Y. State Comm'n on Judicial Conduct*, 351 F. 3d 65, 82 (2d Cir.

2003). "[A]lthough plaintiffs should not 'automatically be thrown into the same hopper for

*Younger* purposes,' there may be 'some circumstances in which legally distinct parties are so

closely related that they should all be subject to the *Younger* considerations which govern any one

of them.'" *Hindu Temple*, 335 F. Supp. 2d at 375 (quoting, *inter alia, Doran v. Salem Inn, Inc*.,

422 U.S. 922, 928 (1975)). "Courts have consistently recognized while '[c]ongruence of interests

is not enough', by itself, to warrant abstention, where the plaintiffs' interests are so inextricably

intertwined that 'direct interference with the state court proceeding is inevitable', *Younger* may

extend to bar the claims of plaintiffs who are not parties to the pending state proceeding."

*Spargo*, 351 F.3d at 82 (holding that two plaintiffs [political supporters of a state judge, the third

plaintiff] presented First Amendment challenges with legal claims that were sufficiently

intertwined with the judge's state claims in that the case presented one of the narrow

circumstances in which *Younger* applies to those not directly involved in the state court action)

(citations omitted). While plaintiffs may seek similar relief or present parallel challenges to the

constitutionality of a state statute or policy, absent other factors establishing interwoven legal

22

interests, *Younger* will not bar the federal action. *Id.* at 83. "Where courts have applied *Younger* abstention to non-parties, those courts have limited the doctrine's application to instances where the non-parties 'seek to directly interfere with the pending [state] proceeding.'" *Citizens for a Strong Ohio v. Marsh*, 123 Fed. Appx. 630, 635 (6th Cir. 2005) (quoting *Spargo*, 351 F. 2d at 85).

In a recent decision from the Eastern District, *Donohue v. Mangano*, No. 12-CV-2568, 2012 WL 3561796 (E.D.N.Y. Aug. 20, 2012), the defendants argued that the *Younger* doctrine mandated abstention based upon an action in Supreme Court, Nassau County for injunctive and declaratory relief that was filed by one of the three sets of plaintiffs. The plaintiffs not involved in the state action argued that *Younger* did not extend to their claims because they were not a party to the ongoing state court proceedings. *See id.* at *12. The court held that while it was unlikely that the plaintiffs' interests were inextricably intertwined for the purposes of *Younger,* it declined to definitively rule on that issue. *See id.* Rather, the court held that the relief sought by the plaintiffs in the state court action was remedial rather than coercive. *See id.* at 13. The court, relying upon holdings in other Circuits, reasoned that a "coercive" action is a state-initiated enforcement action in which the plaintiff does not have a choice to participate and one in which the federal plaintiff is the state court defendant. *See id.* In contrast, a "remedial" proceeding is one in which the plaintiff initiated an option to seek a remedy for the state's wrongful action and to vindicate a wrong inflicted by the state. With that reasoning, the court held that the Nassau County action was "clearly remedial" and not the type of parallel state court proceeding requiring abstention under *Younger. See id.* at *13-*14.

Here, as in *Donohue*, defendants' arguments in support of abstention are imprecise. Defendants argue that the Court should abstain from hearing this matter based upon a civil matter currently pending in Albany County but offer no further analysis or argument in favor of

*Younger*.  In the Albany County action, the petitioner, Retired Public Employees Association ("RPEA"), filed a petition pursuant to Article 78 against defendants herein.  The petitioners, retirees from State service prior to October 1, 2011, petitioned for an order declaring the administrative implementation of an increase in the percentage of contributions by State retirees and/or their dependents based upon CSL § 167(8) invalid, null and void.  The petitioners are also seeking an order declaring the emergency regulation filed on October 1, 2011 invalid, null and void, and are further seeking injunctive relief and a refund.  On February 24, 2012, the respondents filed a motion to dismiss.[7]  Defendants argue that the RPEA case involves the same claims/issues presented herein and a facial challenge to CSL § 167(8).

The Court has reviewed the RPEA pleadings annexed to defendants' motion.  Defendants do not dispute that plaintiffs herein are not a party in the state proceeding.  Therefore, for the *Younger* doctrine to apply herein, defendants must establish that plaintiffs and the RPEA petitioners' interests are "inextricably intertwined."  Defendants have failed to demonstrate that plaintiffs' interests  are so closely related that abstention is warranted.  In the state action, petitioners have not asserted a contractual impairment claim based upon a CBA.  Defendants have not established that plaintiffs' interests will interfere with the state court proceeding, nor has it been established that plaintiffs have an adequate opportunity for judicial review of their federal claims in the pending state court action.  Courts have made clear that the *Younger* doctrine should be applied sparingly and cautiously to federal plaintiffs not parties to an ongoing state action.  Accordingly, this Court finds that the parties and their claims are not "so closely related" to require *Younger* abstention.[8]

---

[7] Based upon the record and this Court's independent research, the motion to dismiss is still pending.

[8] Because the Court finds that defendants have failed to establish the first *Younger* factor, the Court need not discuss the issue of whether the relief sought by the RPEA petitioners is "remedial" or "coercive."

24

**Standard on a Motion to Dismiss under 12(b)(6)**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief and pleadings without considering the substantive merits of the case.  *Global Network* Commc'ns *v. City of New York*, 458 F. 3d 150, 155 (2d Cir. 2006); *Patane v. Clark*, 508 F. 3d 106, 111–12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc's, Inc. v. Shaar Fund, Ltd.*, 493 F. 3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).   "Generally, consideration of a motion to dismiss under Rule 12(b)(6) is limited to consideration of the complaint itself" unless all parties are given a reasonable opportunity to submit extrinsic evidence.  *Faulkner v. Beer*, 463 F. 3d 130, 134 (2d Cir. 2006).  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), a district court generally must confine itself to the four corners of the complaint and look only to the allegations contained therein. *Robinson v. Town of Kent, N.Y.*, No. 11 Civ. 2875, 2012 WL 3024766, at *3-4 (S.D.N.Y. July 24, 2012) (citing *Roth v. Jennings*, 489 F. 3d 499, 509 (2d Cir. 2007)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a) (2), with sufficient facts "to 'sho[w] that the pleader is entitled to relief[.]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted).  Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face." *Id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief. '" *Id*. (quoting *Twombly*, 550 U.S. at 557). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the [ ] complaint must be dismissed[.]" *Id*. at 570.

## I.      Claims Against Officials in their Individual Capacity and Legislative Immunity

"[L]egislators are absolutely immune from suit in their individual capacities for all actions taken 'in the sphere of legitimate legislative activity.'" *Bogan v. Scott–Harris*, 523 U.S. 44, 54 (1998). Legislative immunity only protects municipal officers from civil liability when they are sued in their personal capacities, and not when sued in their official capacities. *Baines v. Masiello*, 288 F. Supp. 2d 376, 383 (W.D.N.Y. 2003) (citations omitted). Legislative immunity may bar claims for money damages, injunctions and declaratory relief brought against state and local officials in their personal capacities. *State Emp.*, 494 F. 3d at 82 (citation omitted); *Bogan*, 523 U.S. 44, 54 (1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Christian v. Town of Riga,* 649 F. Supp. 2d 84, 103-104 (W.D.N.Y. 2009) (holding that legislative immunity shields an official from liability if the act in question was undertaken "in the sphere of legitimate legislative activity") (quoting *Bogan*, 523 U.S. at 54).

Two factors are relevant to determining whether a defendant's acts are within that sphere: (1) whether the actions were an integral part of the legislative process; and (2) whether the actions were legislative "in substance" and "bore the hallmarks of traditional legislation." *Bogan,* 523 U.S. at 54-56. Such traditional legislation includes "policymaking decisions implicating

26

budgetary priories and services the government provides to it's constituents." *Id*.  Legislative

immunity applies to acts within the "legislative sphere" even where the conduct, "if performed in

other than legislative contexts, would in itself be unconstitutional or otherwise contrary to

criminal or civil statutes." *Doe v. McMillan*, 412 U.S. 306, 312–13 (1973) (quotation omitted).

Before defendants in the instant case can invoke legislative immunity, they have the

burden of establishing both of the following: (1) that the acts giving rise to the harm alleged in the

complaint were undertaken when defendants were acting in their legislative capacities under the

functional test set forth in *Bogan*; and (2) that the particular relief sought would enjoin defendants

in their legislative capacities, and not in some other capacity in which they would not be entitled

to legislative immunity.  *State Emp.*, 494 F. 3d at 89; *see also Canary v. Osborn*, 211 F. 3d 324,

328 (6th Cir. 2000) (holding that the burden is on the defendants to establish the existence of

absolute legislative immunity).

Here, defendants argue that by issuing the regulations, they were fulfilling discretionary,

policymaking functions implicating State budgetary priorities.  As discussed *supra*, plaintiffs

have not asserted claims against defendants in their individual capacities.

Motions for leave to amend a complaint should be freely given "when justice so requires."

Fed. R. Civ. P. 15(a)(2).  A court may deny a motion for leave to amend where there is an

apparent or declared reason not to grant leave to amend, such as the futility of amendment.  *See*

*Fahs Const. Group, Inc. v. Gray*, No. 10-CV-0129, 2012 WL 2873532, at *5 (N.D.N.Y. July 12,

2012).

Here, plaintiffs' opposition to defendants' motion is not a formal cross-motion and fails

to (1) attach a copy of the proposed amended complaint, and (2) set forth specifically the

proposed amendments, and identify the amendments in the proposed pleading, either through the

27

submission of a red-lined version of the amended complaint or other equivalent means, in violation of Local Rule 7.1(a)(4). *See id.* (holding that for this reason alone, the court can deny the plaintiffs' request). The absence of a proposed amended complaint precludes this Court from determining whether the proposed amendment would be futile. Plaintiffs' "motion" for permission to file an amended complaint is denied without prejudice to refile. *See Johnson v. Monsanto Chem. Co.*, 129 F. Supp. 2d 189, 197 (N.D.N.Y. 2001).

Based upon the aforementioned, the Court cannot determine whether legislative immunity would apply to any potential claims against defendants in their individual capacities. This ruling does not prevent defendants from renewing their motion with respect to the applicability of the doctrine of legislative immunity after plaintiffs move to amend and upon the completion of sufficient discovery and development of the record.

## II.   Contract Clause

Article I, Section 10 of the Constitution prohibits states from passing any law "impairing the Obligation of Contracts." While the language of the Contracts Clause is absolute on its face, "[i]t does not trump the police power of a state to protect the general welfare of its citizens, a power which is 'paramount to any rights under contracts between individuals.'" *Buffalo Teachers Fed'n v. Tobe*, 464 F. 3d 362, 367 (2d Cir. 2006)(holding that courts must accommodate the Contract Clause with the inherent police power of the state to safeguard the vital interests of its people) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 241 (1978). To state a cause of action for violation of the Contract Clause, a complaint must allege sufficient facts demonstrating that a state law has "operated as a substantial impairment of a contractual relationship." *Nunez v. Cuomo*, No. 11-CV-3457, 2012 WL 3241260, at *6 (E.D.N.Y. Aug. 7, 2012) (citing *Harmon v. Markus*, 412 Fed. Appx. 420, 423 (2d Cir. 2011)). In this regard, there

are three factors that the Court will consider: (1) whether a contractual relationship exists; (2) whether a change in law impairs that contractual relationship; and (3) whether the impairment is substantial. *Harmon,* 412 Fed. Appx. at 423. A state law that impairs a contractual obligation will not be deemed unconstitutional so long as (1) it serves a demonstrated legitimate public purpose, such as remedying a general social or economic problem; and (2) the means chosen to accomplish the public purpose is reasonable and necessary. *See Buffalo Teachers Fed'n*, 464 F. 3d at 368.

### A.      Existence of a Contractual Relationship In Vested Rights

Defendants argue that no express or implied contract obligates them to provide "optional health insurance with a perpetually fixed contribution rate." Rather, defendants contend that the CBA provided members with guarantees for the duration of the collective bargaining agreement only. Plaintiffs claim that pursuant to express language in each of the PEF CBAs, the State was obligated to pay 90% (individual) and 75% (dependent) for each former PEF member who retired after January 1, 1983 and continued, under express agreement, to pay 100% of the cost of individual coverage for PEF members who retired before January 1, 1983.

"All courts agree that if a document unambiguously indicates whether retiree medical benefits are vested, the unambiguous language should be enforced." *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp*., 116 F. 3d 976, 980 (2d Cir. 1997) (citing, *inter alia, UAW v. Yard-Man, Inc.,* 716 F. 2d 1476, 1479 (6th Cir. 1983)). "It is a court's task to enforce a clear and complete written agreement according to the plain meaning of its terms, without looking to extrinsic evidence to create ambiguities not present on the face of the document" and a "mere assertion by a party that contract language means something other than what is clear when read in conjunction with the whole contract is not enough to create an ambiguity." *New York State Court*

*Officers Ass'n v. Hite*, 851 F. Supp. 2d 575, 579-80 (S.D.N.Y. 2012) (citations omitted).  There is a lack of consensus among the Circuits regarding the interpretation of documents that are ambiguous.  *Am. Fed'n*, 116 F. 3d at 980.  Some Circuits have held that "when the parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree."  *See Yard-man, Inc*., 716 F. 2d at 1479.  While the *Yard-man* "inference"  was discussed by the Second Circuit in *Am. Fed'n*, the Court did not specifically adopt the holding.  Specifically, the Court noted that

> [w]hen documents are ambiguous, other circuits have disagreed as to whether at trial, there should be a presumption that retiree benefits are vested or that retiree benefits are not vested.  *Compare Yard-Man*, 716 F. 2d at 1482 (6th Cir.) (apparently presuming that retiree benefits are vested), *with Bidlack,* 993 F. 2d at 608-09 (7th Cir.) (apparently presuming that retiree benefits are not vested). Because we conclude below that there is no need for a trial as the documents at issue in this case could not reasonably be interpreted as promising vested retiree benefits, we need not decide what presumption, if any, would be appropriate at trial.

 *Am. Fed'n*, 116 F.3d at 980, n.3.

        Moreover, while extrinsic evidence may be used to interpret ambiguous CBAs, it may not be used to alter the meaning of unambiguous terms.  *Am. Fed'n*, 116 F. 3d at 981 (citations omitted).   In *Am. Fed'n*, the Second Circuit concluded that, "to reach a trier of fact, an employee does not have to 'point to unambiguous language to support [a] claim.  It is enough [to] point to written language capable of reasonably being interpreted as creating a promise on the part of [the employer] to vest [the recipient's] . . . benefits.)'"  *Id*. at 980 (quotation and other citation omitted).  A district court may not base its finding of ambiguity on the absence of language, and the court may only consider oral statements or other extrinsic evidence after it first finds language in the documents that may reasonably be interpreted as creating a promise to vest benefits.  *Id*.;

*see also Parillo v. FKI Indus., Inc*., 608 F. Supp. 2d 264 (D. Conn. 2009). A single sentence in plan documents can suffice to raise a question that requires resolution by a trier of fact. *See Joyce*, 171 F. 3d at 134.

In this matter, the CBA creates a contractual relationship between plaintiff-retirees and defendants. *See Nunez*, 2012 WL 3241260, at *6. Plaintiffs allege that, "[t]he 2007-2011 PEF CBA (including, without limitation, Articles 9.1, 9.2(h) and 9.13(a)) combine to establish fixed and vested contract rights in favor of the plaintiffs, vested at the time of retirement, to continue and retain their health insurance coverage at the same fixed contribution rate in effect at the time of their retirement." Am. Cplt. at ¶ 69. Plaintiffs allege that the three aforementioned provisions, discussed *supra* and outlined in the complaint at Paragraphs 66, 67 and 68, must be read together.

> At all relevant times herein, prior to the enactment of Chapter 491 of the Laws of 2011, and the actions of the State defendants challenged by the plaintiffs herein, the State contribution rate towards the cost of health insurance premium or subscription charges for the coverage of State employees and retired (PEF/PS&T) State employees, and their dependents, enrolled in NYSHIP or an optional benefit plan thereunder, was: one-hundred percent (100%) for individual coverage for retired State employees who retired before January 1, 1983; ninety percent (90%) for individual coverage for State employees who retired after January 1, 1983; and, seventy-five percent (75%) for dependent coverage for retired State employees.

*Id.*. at ¶ 93.

Plaintiffs further allege that,

> [b]y their terms, the PEF CBAs and 1982 MOU contractually obligated the State to continue to provide health insurance under NYSHIP to retired PEF members  including the continuation of the State contribution rates as agreed and set forth therein, at the same contribution rates in effect at the time of retirement.
>
> The terms of the PEF CBAs concerning the retention of retirement health insurance benefits by PEF retirees, including the continuation of the State contribution rates as agreed therein, had not been modified or replaced by any successor collective bargaining agreement as of

31

> October 1, 2011, the date of imposition of the increased premium rates
> on PEF and other retirees.

*Id.* at ¶¶ 94-95.

Plaintiffs claim that the plain language of the CBA allegedly provides that "[t]he State shall continue to provide all the forms and extent of coverage as defined by the contracts in force on April 1, 2007 with the State health insurance carriers  unless specifically modified or replaced pursuant to this agreement."  *Id*. at ¶ 66.

Article Section 9.2(h) of the 2007-201 PEF CBA provides as follows "[t he State agrees to pay 90 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage including drug coverage provided under the Empire Plan."  *Id*. at ¶ 67.

Article 9.13(a) of the 2007-2011 PEF CBA provides that  "[e]mployees on the payroll and covered by the State Health Insurance Program have the right to retain  health insurance coverage after retirement, upon the completion of ten years of State service."

The retired employees allege that they are covered by the terms of the CBA that were in effect at the time of their retirement insofar as it provides for the continuation of their health benefits.  *Id*. at ¶¶ 76, 107.

Plaintiffs further allege that, "the State's longstanding practice and established course of conduct further establishes the State's contractual obligation to provide for the continuation of health insurance benefits for PS&T Unit retirees, including a continuation of the State contribution rates as provided for by the CBA in effect at the time a PS&T Unit member retires."  *Id*. at ¶ 102.

Based upon the aforementioned, the Court finds that plaintiffs' allegations identify written language capable of reasonably being interpreted as creating a promise to provide plaintiffs with a vested interest in perpetually fixed NYSHIP contribution.

32

Defendants argue that the aforementioned sections of the CBA apply  "for the duration of the CBA."  However, the record, as it presently exists, does not support that conclusion. Defendant has not cited to any portion of the CBAs with any such limiting language.  Indeed, the record does not contain copies of the relevant CBAs.  Defendants fail to submit any further argument in support of dismissal on this issue and cite to one case in support of the proposition that history cannot serve to bind the State to promises that it never made.  *See Aeneas McDonald Pol. Benevolent Ass'n v. City of Geneva*, 92 N.Y. 2d 326, 333 (1998).  However,  *Aeneas* is readily distinguishable from the facts at hand.

In *Aeneas*, the labor relationship between the City and the police department had been governed by collective bargaining agreements.  However, none of the agreements addressed the issue of health benefits for retirees.  This fact alone sets *Aeneas* apart from the instant case.  Here, there is a CBA between defendants and plaintiffs that contains specific language addressing health benefits.  *See Della Rocco v. City of Schenectady*, 252 A.D. 2d 82, 84-85 (3d Dep't 1998) (distinguishing *Aeneas* because the action before the court contained a "continuum of collective bargaining contracts between defendant and plaintiffs, each containing identical clauses which provided for hospitalization and major medical coverage for retired members and their families").

Defendants also argue that plaintiffs do not have a statutorily implied right to a fixed amount toward retiree health insurance.  Defendants cite to a recent Southern District decision in *New York State Court Officers Ass'n v. Hite*, 851 F. Supp. 2d 575 (S.D.N.Y. 2012).[9]  Plaintiffs failed to respond to this argument and did not address the *NYSCOA* case in their Memorandum of Law.  The *NYSCOA* case was before the court on a motion for a preliminary injunction.  The

---

[9] After the Southern District Court issued the decision on the motion for a preliminary injunction, the case was transferred to the Northern District of New York.  The matter is presently pending herein under Docket No. 12-CV-532.

relevant language of their CBA provided, "[e]mployees . . . shall receive health and prescription drug benefits . . . at the same contribution level . . . that applies to the majority of represented Executive Branch employees." *Id*. at 577. The court held that "[t]he contract does not guarantee that Union members will receive health benefits at the rates set by Civil Service law § 167(1)." *Id*. at 579. Rather, "[i]t guarantees that they will receive benefits at the same rates as the majority of executive branch employees." *Id*. The court concluded that based upon the unambiguous terms of the contract, the plaintiffs contracted for the same health benefits as the executive branch employees. *Id*. The plaintiffs cited to *Buffalo Teachers Fed'n* in support of their claims but the court found that the, "clear contractual obligations . . . differ materially from the action at issue here." *Id*. at 580. The court also addressed the plaintiffs' argument that section 167(1) itself created contractual rights. The court rejected that argument and reasoned, "defendants correctly note that courts are hesitant to read contractual rights into statutes because to do so would too easily preclude New York State from changing its policies." *Id.* at 582. The court held that "[r]eading section 167 as a contract would improperly impair the ability of the Legislature to change its policies regarding its employees' health insurance plans." *Id*. Thus, the court held that because the plaintiffs failed to demonstrate a likelihood of success on the merits, the motion for a preliminary injunction was denied. On August 12, 2012, the Second Circuit affirmed the lower court decision. *New York State Court Officers Ass'n v. Hite*, 475 Fed. Appx. 803 (2d Cir. 2012). The Second Circuit reviewed the district court's decision to deny a preliminary injunction and affirmed the order for "substantially the same reasons." However, the Court noted that , "[w]e intimate no views on the ultimate merits as maybe developed upon a full trial." *Id*. at 805 n.3.

      This Court has carefully reviewed the district court's decision in *NYSCOA* and the complaint in that case and finds that the *NYSCOA* case is distinguishable from this action.

Factually, the CBA at issue herein contains specific written language that is reasonably interpreted as a promise to vest the benefits.  Procedurally, the *NYSCOA* case is presently pending in this Court and contains three causes of action: (1) violation of the Contracts Clause of U.S. Constitution; (2) violation of the Due Process Clause of the Fourteenth Amendment; and (3) a request for a declaratory judgment that Civil Service Law 167 and the implementing regulations are unconstitutional as applied.  *See NYSCOA v. Hite,* 12-CV-532,  Dkt. No. 1.  In the March 2012 decision, the district court did not dismiss any portion of the plaintiffs' complaint.  The court only denied the application for a preliminary injunction.  All three originally asserted causes of action are still pending.  While the March 2012 decision in *NYSCOA v. Hite* is clearly relevant to the issues presented in this lawsuit, the district court's holding on the motion for a preliminary injunction is not controlling on this motion to dismiss.  A motion for a preliminary injunction requires a different standard of proof than a motion to dismiss.  *See Lawrence v. Town of Brookhaven Dep't of Hous., Cmty. Dev. & Intergov. Affairs*, No. 07-CV-2243, 2007 WL 4591845, at *13 (E.D.N.Y. Dec. 26, 2007).  "[U]nlike a preliminary injunction motion, dismissal pursuant to Rule 12(b)(6) is not based on whether Plaintiff is likely to prevail, and all reasonable inferences must be viewed in a light most favorable to Plaintiff."  *Id.*  "In opposing a motion to dismiss, Plaintiff is not required to prove her case; she must simply establish that the allegations in the Complaint are sufficient to render her claims plausible."  *Id.* (citing *Iqbal*, 490 F. 3d at 158) (internal citation omitted).  Accordingly, defendants' reliance upon the *NYSCOA* holding is misplaced at this stage of the litigation.

In the alternative, plaintiffs argue that should the Court deem the language of the statute ambiguous, extrinsic evidence demonstrates the parties' intent to contract for vested benefits. Such evidence includes the Bill Jacket to Chapter 14 of the Laws of 1983 and past practices and

representations by the State.  In addition, plaintiffs cite to various holdings from New York State courts and district court decisions in both this Circuit and others where the courts concluded, as a matter of law, that the subject CBA created vested, lifetime rights to unchanged health insurance benefits.  At this juncture, the Court will not consider such extrinsic evidence and further, the Court is not compelled to follow the holdings of the cases cited by plaintiffs.  Those actions involved motions for summary judgment and thus, a comprehensive analysis of the record and a vastly different standard of proof on both parties.  *See Myers*, 244 A.D. 2d at 847; *Joyce*, 171 F. 3d at 133-34.

As discussed *supra*, the Court has found that plaintiffs have satisfied their burden to identify specific written language that is reasonably susceptible to interpretation as a promise to provide a perpetually fixed contribution rate.  On a motion to dismiss, that is all that plaintiffs must establish.  Consequently, at this stage of the litigation, plaintiffs have adequately pled the existence of a contractual right in perpetually fixed contributions to survive a motion to dismiss. However, the Court cannot make any conclusions as a matter of law with respect to this issue.

### B.    Substantial Impairment

Even assuming plaintiffs possessed a valid contractual interest in a perpetual NYSHIP contribution rate, defendants argue that they have not substantially impaired plaintiffs' rights. Defendants contend that the NYSHIP program is still in place and thus, defendants are fulfilling their contractual obligations.  Moreover, defendants contend that the adjustment to the subsidy rate was a foreseeable variable and within the parties' reasonable expectations.

An impairment of a contract must be "substantial" for it to violate the Contract Clause. *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983). Impairments that affect the terms upon which the parties have reasonably relied or that

significantly alter the duties of the party are substantial. *Allied Structural Steel Co.*, 498 U.S. at 245. The primary consideration in determining whether the state law has, in fact, operated as a substantial impairment is the extent to which reasonable expectations under the contract have been disrupted. *Sanitation and Recycling Indus., Inc. v. City of New York*, 107 F. 3d 985, 993 (2d Cir. 1997) ("Impairment is greatest where the challenged government legislation was wholly unexpected"). "[A] law that provides only one side of the bargaining table with the power to modify any term of a contract after it has been negotiated and executed is perhaps the epitome of a substantial impairment." *Donohue*, 2012 WL 3561796, at *26 ("This far-reaching power [ ] can arguably be itself a substantial impairment to a contractual relationship") (citing *Baltimore Teachers Union, Am. Fed'n of Teachers Local 340, AFL-CIO v. Mayor and City Council of Baltimore*, 6 F. 3d 1012, 1016 (4th Cir. 1993)).

In this matter, plaintiffs allege that the new reduced contribution rates resulted in an increase in the cost of health insurance in the amount of twenty percent (20%) for individual coverage and eight percent (8%) for dependent coverage. Am Cplt. at ¶ 132. Plaintiffs further allege that the implementation of the reduced rate results in increases to the cost of health insurance for plaintiffs that is "not limited in duration." *Id.* at ¶ 160. Plaintiffs claim that they obtained fixed and vested benefits as compensation for lost job mobility and possible wage increases and that the benefits accrued after the employee had already given up his or her potential to seek a better job or better wages. *Id.* at ¶¶ 114-115.

Defendants argue that CSL § 167(8) reflected "the lawmakers' understanding" that the cost of NYSHIP coverage was subject to adjustment. In support of this assertion, defendants rely upon extraneous documents not incorporated, mentioned or relied upon in the complaint. Thus, the Court will not consider the documents in the context of the within motion. Moreover, even

assuming that the Legislature was aware of the possible changes in coverage and costs, defendants have not established, or even alleged, a similar understanding on the part of plaintiffs. To the contrary, Section 9.1 allegedly provides that coverage shall be paid, "unless specifically modified or replaced pursuant to this Agreement." *Id.* at ¶ 66. To this end, plaintiffs allege that the fixed and vested rights were duly bargained for in exchange for many years of State service. *Id*. at ¶ 110. Further, plaintiffs state that they "reasonably relied upon the expectation that the State would continue to contribute towards their health insurance costs in retirement at the same contribution rates fixed and vested at the time of retirement and that they would be able to retain and continue those retirement health insurance benefits after their retirement as set forth in the CBAs." *Id*. at ¶¶ 111, 161. Further allegations of plaintiffs' expectations are articulated throughout the complaint. Plaintiffs allege that "the State's longstanding practice and established course of conduct further establishes the State's contractual obligation to provide for the continuation of health insurance benefits for PS&T Unit retirees, including the continuation of . . . rates in . . . as provided for by the CBA in effect at the time of [retirement]." *Id.* at ¶ 101. Moreover, plaintiffs allege that they reasonably expected their retirement benefits to continue, because they were powerless to negotiate for the continuation of their benefits after they retired. *Id*. at ¶ 121. Based upon the allegations in the complaint, language in the CBA and CSL § 167(8), plaintiffs have sufficiently alleged that the impairment was not reasonably expected.

Further, plaintiffs allege that defendants unilaterally altered the terms of the CBA after it had been negotiated and executed. *Id*. at ¶ 104. Plaintiffs contend that, pursuant to the "Taylor Law, terms and conditions of employment cannot be unilaterally changed by the State defendants absent collective bargaining." *Id*. Based upon the record as it currently exists, plaintiffs have

pled sufficient facts supporting a plausible claim that the impairment to their contractual rights was substantial.[10]

### C.    Legitimate Public Purpose and Reasonable and Necessary

When a state law constitutes substantial impairment, the state must show a significant and legitimate public purpose behind the law.  *See Energy Reserves Group*, 459 U.S. at 411-12.  A law that substantially impairs contractual relations must be specifically tailored to "meet the societal ill it is supposedly designed to ameliorate."  *Allied Structural Steel*, 438 U.S. at 243.  The Second Circuit has held, "[a] legitimate public purpose is one 'aimed at remedying an important general social or economic problem rather than providing a benefit to special interests.'"  *Buffalo Teachers Fed'n*, 464 F. 3d at 368.  "Courts have often held that the legislative interest in addressing a fiscal emergency is a legitimate public interest" however, "the purpose may not be simply the financial benefit of the sovereign."  *Id.* (citation omitted).  Moreover, "[a]lthough economic concerns can give rise to the [ ] use of the police power, such concerns must be related to 'unprecedented emergencies' such as mass foreclosures caused by the Great Depression."  *Id.*  "That a contract-impairing law has a legitimate public purpose does not mean there is no Contracts Clause violation.  The impairment must also be one where the means chosen are reasonable and necessary to meet the stated legitimate public purpose."  *Id.* at 369.  On a motion to dismiss, the court is not bound to accept the legislature's justification for the public purpose.

---

[10] Defendants cite to *Local 342, Long Island Pub. Serv. Emp., UMD, ILA, AFL-CIO v. Town Bd. of the Town of Huntington*, 31 F. 3d 1191, 1194 (2d Cir. 1994) in support of the argument that the law did not prevent the parties from fulfilling their obligations and thus, there was no substantial impairment. The Court has reviewed the holding and finds the facts vastly dissimilar from those at hand.  Moreover, *Local 342* was before the Southern District on a motion for a preliminary injunction which, as discussed *supra*, requires a different standard of proof than a motion to dismiss.  Thus, at this stage of the litigation, given the factual and procedural differences, the Court is not compelled to abide by the holding in *Local 342*.

*See Nat'l Educ. Ass'n -Rhode Island by Scigulinsky v. Retirement Bd. of Rhode Island Emp. Retirement Sys.*, 890 F . Supp. 1143, 1162 (D.R.I. 1995).

The "reasonable and necessary" analysis involves a consideration of whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the legislation's adoption. *Am. Fed'n of State, County &  Mun. Emps. v. City of Benton, Arkansas*, 513 F. 3d 874, 879-880 (8th Cir. 2008) (citing *Energy Reserves Group, Inc.*, 495 U.S. at 412 (1983)).  Before analyzing whether an act is reasonable and necessary, the courts must determine the degree of deference afforded to the legislature.  Where the state impairs a public contract to which it is a party, the state's self-interest is at stake and, thus, the court will afford less deference to the state's decision to alter its own contractual obligations.  *United Auto*, 633 F.3d at 45; *see also Buffalo Teachers Fed'n*, 464 F. 3d at 369 (holding that "[w]hen a state's legislation is self-serving and impairs the obligations of its own contracts, courts are less deferential to the state's assessment of reasonableness and necessity").  "The relevant inquiry for the Court is to ensure that states neither 'consider impairing the obligations of [their] own contracts on a par with other policy alternatives' nor 'impose a drastic impairment when an evident and more moderate course would serve its purposes equally well,' nor act unreasonably 'in light of the surrounding circumstances.'"  *Donohue*, 2012 WL 3561796, at *30 (citing *U.S. Trust*, 431 U.S. at 30–31).  In this matter, the State is a party to the CBA and, thus, the Court will afford less deference to the state's decisions.

"To be reasonable and necessary under less deference scrutiny, it must be shown that the state did not (1) 'consider impairing the . . . contracts on par with other policy alternatives' or (2) 'impose a drastic impairment when an evident and more moderate course would serve its purpose

equally well,' nor (3) act unreasonably 'in light of the surrounding circumstances.'" *Buffalo Teachers Fed'n*, 464 F. 3d at 371.  Some factors to be considered under this inquiry include: "whether the act (1) was an emergency measure; (2) was one to protect a basic societal interest, rather than particular individuals; (3) was tailored appropriately to its purpose; (4) imposed reasonable conditions; and (5) was limited to the duration of the emergency." *Donohue*, 2012 WL 3561796, at *30 (citing, *inter alia, Energy Reserves Grp.*, 459 U.S. at 410 n.11).

In a case in this district, Senior United States District Judge Lawrence E. Kahn addressed the issue of reasonableness while affording "less deference" to the State's decisions. *Donohue v. Patterson*, 715 F. Supp. 2d 306, 322 (N.D.N.Y. 2010).  The *Donohue* case involved an emergency appropriations bill which enacted unpaid furloughs, a wage freeze, and a benefits freeze on certain groups of state employees in contravention of a number of CBAs.  *Id*. at 313.  The "extender bill" expressly imposed the altered terms "[n]ot withstanding any other provisions of this section or of any other law, including article fourteen of this chapter, or collective bargaining agreement or other analogous contract or binding arbitration award."  *Id*. at 314.  The court assumed there was a legitimate public purpose and directed it's attention to the reasonableness issue.  Judge Kahn noted that the defendants failed to present any showing of a substantial record of any legislative consideration of policy alternatives to the challenged bill:

> Defendants do not, and evidently cannot, direct the Court to any legislative consideration of policy alternatives to the challenged terms in the bill; rather, the only support offered by Defendants for their assertion that the contractual impairment was not considered on par with other alternatives is a list of assorted expenditure decisions made by the State over the past two years, such as hiring freezes and delays of school aid.  This will not do.  That the State has made choices about funding and that a fiscal crisis remains today surely cannot, without much more, be sufficient justification for a drastic impairment of contracts to which the State is a party. Without any showing of a substantial record of considered alternatives the

41

>                reasonableness and necessity of the challenged provisions are cast in
>                serious doubt.

*Id*. at 322.

Rather, the court noted that defendants relied upon "generalities" and failed to demonstrate that they "did not impose a drastic impairment when a more moderate course was available." *Id.*  The court addressed the affidavits submitted by the defendants in support of the motion and held as follows:

>                While Defendants have identified a fiscal emergency and note that
>                state personnel comprise a significant source of state spending, their
>                argument equates the broad public purpose of addressing the fiscal
>                crisis with retrieving a specific level of savings attributed to the
>                provisions.  The two are not the same. Where reasonable alternatives
>                exist for addressing the fiscal needs of the State which do not impair
>                contracts, action taken that does impair such contracts is not an
>                appropriate use of State power. In its submissions to the Court, the
>                State artificially limits the scope of alternatives for addressing the
>                fiscal crisis to retrieving a certain amount of savings from unionized
>                state employees.  According to this view, the reasonableness and
>                necessity of the challenged provisions is demonstrated simply because
>                there is a fiscal crisis and Plaintiffs have not identified alternative
>                sources from their own contracts for the same level of funding as that
>                desired by the State. Plaintiffs are not charged with that responsibility.
>                The desired savings need not come from state personnel in the amount
>                identified by the State. Rather, the State must consider both
>                alternatives that do not impair contracts as well as those which might
>                do so, but effect lesser degrees of impairment.

*Id*. at 323.

Judge Kahn concluded that,

>                [m]ost importantly, the Court cannot ignore the conspicuous absence
>                of a record showing that options were actually considered and
>                compared, and that the conclusion was then reached that only the
>                enacted provisions would suffice to fulfill a specified public purpose.
>                While the Court would afford significant deference to a legislative
>                judgment on an issue of this type where the State is not a party to the
>                impaired contract, the Court cannot do so here — not only because the
>                state is a contractual party but, far more critically, because actual
>                legislative findings in support of the provision cannot be located; due

42

> to the take-it-or-leave nature of the extender bill, in conjunction with the Senate's contemporaneous and unanimous statement opposing the challenged provisions, there is no adequate basis before the Court on which it may be established that the provisions are reasonable and necessary.

*Id*. at 323.

While a fiscal crisis is a legitimate public interest, defendants cannot prevail on a motion to dismiss the complaint with an argument limited to "emphasizing the State's fiscal difficulties." *See Id*.  Broad reference to an economic problem simply does not speak to the policy consideration and tailoring that is required to pass scrutiny under plaintiffs' Contracts Clause challenge.  *Id*.

At this stage of the litigation, all that is required is that plaintiffs plead a "cognizable claim for a remedy which may be proved at trial."  *See Henrietta D. v. Giuliani*, No. 95-CV-0641, 1996 WL 633382, at *12 (E.D.N.Y. Oct. 25, 1996).  Plaintiffs allege that while CSL § 167(8) permitted an increase of state contribution rates to employees not subject to a CBA, nothing in Chapter 491 identified a legitimate State purpose to retroactively reduce the State contribution rate for State retirees, or that the same was necessary and reasonable to accomplish such purpose.  Am. Cplt. at ¶¶ 125-126.  Plaintiffs allege that the defendants' actions were an abuse of police power and unnecessary to achieve legitimate government purposes and that defendants failed to advance any legitimate rationale for the impairments.  *Id*. at ¶¶ 165-166.  Plaintiffs assert that the only "rationale" or "purpose" was that it was "necessary to implement the negotiated agreement between the State and the CSEA."  *Id*. at ¶ 167.  To the contrary, plaintiffs contend that the impairment actually defeats the significant public purpose of ensuring adequate and affordable healthcare for retirees.  *Id*. at ¶ 169.  On a motion to dismiss, the Court must accept these

allegations as true.  Thus, the Court finds that plaintiffs have pled sufficient facts suggesting that defendants' actions were not reasonable and necessary.

While defendants rely upon the economic emergency, a resolution of the issues surrounding defendants' fiscal crisis and economic situation will involve questions not appropriately resolved on a motion for dismissal.  *See Nat'l Educ. Ass'n*, 890 F. Supp. at 1164 (holding that a determination of the reasonableness of the defendants' actions based upon the economic crisis involving the Retirement System was premature on a motion to dismiss).  Courts have held that, "[r]esolution of . . . whether the contract-impairing enactment was 'reasonable and necessary to serve an important public purpose,' . . . is not appropriate in the context of a motion to dismiss."  *JSS Realty Co., LLC v. Town of Kittery, Maine*, 177 F. Supp. 2d 64, 70 (D. Me. 2001).  Defendants argue that the amendment to CSL § 167 was for a legitimate public purpose based upon the State's economic emergency and fiscal crisis.  Even assuming that the Court accepts that explanation as a legitimate purpose, defendants fail to demonstrate that the means chosen were necessary.  Defendants do not explain why the language and provisions of Chapter 491 were selected and rather, rely upon the measures that the State refrained from enacting as a means of demonstrating reasonableness including the State's decision not to eliminate the NYSHIP program or rewrite CSL § 167 to prescribe more severe modifications.  These assertions are unsupported by the record.  Moreover, as Judge Kahn noted, listing the various ways that the State has attempted to "overhaul" the economy, *i.e.*, prison consolidation, mergers of state agencies, and reforms to the juvenile system, without more, is insufficient justification for impairing State contracts.  *See Donohue*, 715 F. Supp. 2d at 323.

To summarize, although defendants may prove otherwise, upon completion of discovery and a motion for summary judgment, at this stage of the litigation, plaintiffs have met their

burden and have alleged a plausible cause of action for a violation of the Contracts Clause.

However, the parties are cautioned to appreciate the "distinction" between the Rule 12(b)(6)

standard and the summary judgment standard.  The burden on the non-movant is significantly

different on a motion for summary judgment.  "Even if the same relevant documents were

considered at each stage, general facts  [. . . ] receive consideration at summary judgment, but not

in the Rule 12(b)(6) analysis."  *Werbowsky v. Am. Waste Serv., Inc.*, No. 97-4319, 1998 WL

939882, at *5 (6th Cir. Dec. 22, 1998) (holding that the Rule 12(b)(6) ruling was not a final

judgment, and did not bind the district court at summary judgment).  If presented with a motion

for summary judgment, plaintiffs will face the burden of citing to facts in the record and "must go

beyond the pleadings and come forth with genuine issues of fact for trial."  *See Connection*

*Training Servs. v. City of Philadelphia,* 358 Fed. Appx. 315, 318 (3d Cir. 2009).

## II.    Due Process

Initially, the Court is compelled to point out that both defendants and plaintiffs present

nebulous arguments with respect to this claim.  Plaintiffs simply claim that defendants violated

their Fourteenth Amendment rights to be afforded adequate notice and a reasonable opportunity

to be heard before being deprived of property to which they were lawfully entitled.  Plaintiffs

argue that they possessed sufficient collective bargaining and statutorily created contract rights

and that defendants abolished the benefit without proper notice to plaintiffs.  Defendants argue

that plaintiffs do not have a legitimate claim of entitlement to a property interest in insurance cost

percentages and, therefore, cannot sustain a claim under Due Process.

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive

any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, §

1. In order to demonstrate a violation of either substantive or procedural due process rights, the

plaintiff must first demonstrate the possession of a federally protected property right to the relief

sought. *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 236 (E.D.N.Y. 2009) (citing *Lisa's*

*Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).  Property interests "are

created and their dimensions are defined by existing rules or understandings that stem from an

independent source such as state law-rules or understandings that secure certain benefits and that

support claims of entitlement to those benefits."  *Bd. of Regents of State Coll. v. Roth*, 408 U.S.

564, 577 (1972) (holding that the plaintiff must have more than a unilateral expectation; the

plaintiff must have a legitimate claim of entitlement to the benefit).  The Second Circuit has held

that, "[i]n order for a person to have a property interest in a benefit such as the right to payment

under a contract, [h]e must have more than a unilateral expectation of it.  He must, instead, have a

legitimate claim of entitlement to it."  *Local 342, Long Island Pub. Serv. Emp., UMD, ILA, AFL-*

*CIO v. Town Bd. of the Town of Huntington*, 31 F. 3d 1191, 1194 (2d Cir. 1994) (citations

omitted).  "When determining whether a plaintiff has a claim of entitlement, we focus on the

applicable statute, contract or regulation that purports to establish the benefit."  *Martz v. Vill. of*

*Valley Stream*, 22 F. 3d 26, 30 (2d Cir.1994).

　　　　"Courts have determined that in appropriate circumstances, contractual rights arising

from collective bargaining agreement give rise to constitutional property right."  *Jackson v.*

*Roslyn Bd. of Educ*., 652 F. Supp. 2d 332, 341 (E.D.N.Y. 2009) (citing *Ciambriello v. Cty. of*

*Nassau*, 292 F. 3d 307, 314 (2d Cir. 2002).  A "property interest in employment can be created by

ordinance or state law."  *Winston v. City of New York,* 759 F.2d 242, 247 (2d Cir. 1985) (holding

that the plaintiffs' benefits were found in the New York State Constitution and vested in the

plaintiffs by the terms of a statutory scheme).  The Second Circuit has held that,

> [i]n determining whether a given benefits regime creates a property
> interest protected by the Due Process Clause, we look to the statutes

and regulations governing the distribution of benefits. Where those
statutes or regulations meaningfully channel official discretion by
mandating a defined administrative outcome, a property interest will
be found to exist.

*Kapps v. Wing*, 404 F. 3d 105, 113 (2d Cir. 2005) (internal citations and quotation marks

omitted).  Courts in this circuit have held that statutory framework may create a property interest.

*See Kapps*, 404 F. 3d at 104; *Basciano v. Herkimer*, 605 F. 2d 605 (2d Cir. 1978) (holding that

city administrative code created a property right in receipt of accident disability retirement

benefits, where the code required officials to give benefits to applicants who met specified

criteria); *see also Winston*, 759 F. 2d at 242; *Sparveri v. Town of Rocky Hill*, 396 F. Supp. 2d 214,

218 (D. Conn. 2005) (noting that the plaintiff claimed that her entitlement to the level of pension

and healthcare benefits was rooted in the statutory pension scheme established by the Town

Charter and Plan ordinance).

        In the complaint, plaintiffs' Fifth Cause of Action contains allegations relating to due

process.  Plaintiffs claim that the health insurance benefits provided by the State constitute vested

property rights to which they have a proprietary interest.  Am. Cplt. at ¶¶ 103, 106.  Plaintiffs

claim that they were deprived of their property without adequate notice or an opportunity to be

heard. *Id.* at ¶¶ 213-214.  While the Court cannot conclude as a matter of law that plaintiffs'

possessed a property interest within the meaning of the Fourteenth Amendment, plaintiffs have

sufficiently articulated and pled due process violations to survive a motion to dismiss.

                                    **CONCLUSION**

        **IT IS HEREBY**

        **ORDERED** that defendants' motion to dismiss plaintiffs' complaint (Dkt. No. 11) is

**GRANTED IN PART AND DENIED IN PART**; it is further

**ORDERED** that defendants' motion to dismiss plaintiffs' complaint as against the State of New York, New York State Civil Service Department, New York State Civil Service Commission, New York State and Local Retirement System and New York State Governor's Office of Employee Relations is **GRANTED**.  All claims against these defendants are dismissed; it is further

**ORDERED** that defendants' motion to dismiss plaintiffs' claims for monetary damages asserted against defendants Hite, Ahl, Hanrahan, Megna, DiNapoli, and Johnson in their official capacity is **GRANTED**; it is further

**ORDERED** that defendants' motion to dismiss plaintiffs' claims for injunctive and declaratory relief asserted against defendants Hite, Ahl, Hanrahan, Megna, DiNapoli and Johnson in their official capacity is **GRANTED** only to the extent that such claims seek retrospective relief; it is further

**ORDERED** that defendants' motion to dismiss plaintiffs' Article 78 claims is **GRANTED**; it is further

**ORDERED** that defendants' motion is denied in all other respects.

**IT IS SO ORDERED.**

Dated:  December 4, 2012
       Albany, New York

Mae A. D'Agostino
U.S. District Judge

48