**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**WAYNE SPENCE as PRESIDENT of**
**THE NEW YORK STATE PUBLIC EMPLOYEES**
**FEDERATION, AFL-CIO, NEW YORK STATE**
**PUBLIC EMPLOYEES FEDERATION, AFL-CIO,**
**and KAREN DANISH, JAMES CARR, ROBERT H.**
**HARMS, JR., KENNETH R. HUNTER, MARY REID,**
**CALVIN THAYER, and RAYMOND FERRARO**
**on Behalf of Themselves and All Others Similarly**
**Situated,**

**Plaintiffs,**

    **vs.**                                          **1:11-CV-1533**
                                                       **(MAD/CFH)**

**ANDREW M. CUOMO, as Governor of the State of New York,**
**PATRICIA A. HITE, in her official capacity as Acting**
**Commissioner, New York State Civil Service Department,**
**CAROLINE W. AHL and J. DENNIS HANRAHAN, in their**
**official capacities as Commissioners of the New York State**
**Civil Service Commission, ROBERT L. MEGNA, in his official**
**capacity as Director of the New York State Division of the**
**Budget, and THOMAS P. DiNAPOLI, in his official capacity as**
**Comptroller of the State of New York, and GARY JOHNSON,**
**in his official capacity as Executive Director of the Governor's**
**Office of Employee Relations,**

**Defendants.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **NEW YORK STATE PUBLIC** | **RITA J. STRAUSS, ESQ.** |
| **EMPLOYEES FEDERATION, AFL-CIO** | **JOHN F. KERSHKO, ESQ.** |
| P.O. Box 12414 | |
| 1168-70 Troy-Schenectady Road | |
| Albany, New York 12212-3414 | |
| Attorneys for Plaintiffs | |
| | |
| **OFFICE OF THE NEW YORK** | **HELENA LYNCH, AAG** |
| **STATE ATTORNEY GENERAL** | **RICHARD LOMBARDO, AAG** |
| The Capitol | |
| Albany, New York 12224 | |
| Attorneys for Defendants | |

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION[1]

In an amended complaint filed on July 30, 2014, Plaintiffs seek declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202, and money damages, to redress Defendants' alleged deprivation of Plaintiffs' rights secured pursuant to the Contracts Clause of the United States Constitution, the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, Article I, § 6 of the New York State Constitution, Article III, § 1 of the New York State Constitution, and for breach of contract, and violation of New York State Civil Service Law § 167, resulting from Defendants' unilateral action effective October 1, 2011, increasing the contribution rates that Plaintiffs, who are active and retired employees of the State of New York, pay for their health insurance in retirement. *See* Dkt. No. 65 at ¶ 1. Plaintiffs further seek an order declaring Chapter 491 of the Laws of 2011, amending Civil Service Law § 167(8), unconstitutional, as applied, and enjoining Defendants' implementation thereof, to the extent that

---

[1] The instant case is one of eleven related cases currently before this Court, all brought against, for the most part, the same individual Defendants and are all related to the increase in contribution rates for retirees' health insurance. *See Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.); *NYSCOBA, Inc. v. New York*, No. 1:11-cv-1523 (N.D.N.Y.); *N.Y.S. Law Enforcement Officers Union Council 82, AFSCME, AFL-CIO v. New York*, No. 1:11-cv-1525 (N.D.N.Y.); *Police Benevolent Assoc. of the N.Y.S. Troopers, Inc. v. New York*, No. 1:11-cv-1526 (N.D.N.Y.); *N.Y.S. Police Investigators Assoc., Local 4 IUPA, AFL-CIO v. New York*, No. 1:11-cv-1527 (N.D.N.Y.); *Police Benevolent Assoc. of N.Y.S., Inc. v. New York*, No. 1:11-cv-1528 (N.D.N.Y.); *Krey v. Cuomo*, No. 1:11-cv-1529 (N.D.N.Y.); *Spence v. New York*, No. 1:11-cv-1533 (N.D.N.Y.); *Roberts v. New York*, No. 1:12-cv-46 (N.D.N.Y.); *N.Y. Court Officers Assoc. v. Hite*, No. 1:12-cv-532 (N.D.N.Y.); *Brown v. New York*, No. 1:13-cv-645 (N.D.N.Y.). With minor variations, the related cases all assert the same causes of action and raise the same arguments in the pending motions for summary judgment. The Court has determined that *Donohue v. Cuomo*, No. 1:11-cv-1530 (N.D.N.Y.) shall serve as the "Lead Case." Familiarity with the Lead Case is presumed. The Court adopts and incorporates by reference the related Memorandum-Decision and Order in the Lead Case into this Memorandum-Decision and Order and will only address those facts and legal issues that are distinct from the Lead Case.

said law and any regulations adopted thereunder impermissibly impair the obligation of the contract between the State and individual Plaintiffs, and the class they represent, by increasing the contribution rates that such retirees are required to pay for health insurance benefits in retirement. *See id.* at ¶ 2.

Currently before the Court is Defendants' motion for summary judgment. *See* Dkt. No. 99.

## II. BACKGROUND

### A.     The Parties

Plaintiff Wayne Spence is the President of the New York State Public Employees Federation, AFL-CIO ("PEF"). *See* Dkt. No. 105 at ¶ 1; *see also* Dkt. No. 76 (granting request to substitute Wayne Spence, the new PEF president, for Susan M. Kent). Plaintiff PEF is an employee organization and is the collective negotiating representative for New York State employees in the Professional, Scientific and Technical Services Unit ("PS&T Unit"), many of whom are enrolled in and receive benefits through the New York State Health Insurance Program ("NYSHIP"). *See* Dkt. No. 105 at ¶ 2. Plaintiffs Karen Danish, James Carr, Kenneth R. Hunter, and Raymond Ferraro are retired former members of the bargaining unit represented by PEF and are receiving dependent coverage health benefits through NYSHIP. *See id.* at ¶ 3. Plaintiffs Robert H. Harms, Jr., Mary Reid, and Calvin Thayer are retired former members of the bargaining unit represented by PEF and are receiving individual coverage health benefits through NYSHIP. *See id.* at ¶ 4.

Defendant Andrew Cuomo is Governor of the State of New York. *See id.* at ¶ 5. Defendant Patricia A. Hite was, in 2011, Acting Commissioner of the New York State

Department of Civil Service.  *See id.* at ¶ 6.[2]  Defendants Caroline W. Ahl and Dennis Hanrahan

were, in 2011, the members of the Civil Service Commission.  *See id.* at ¶ 7.  Defendant Robert

Megna was, in 2011, the Director of the New York State Division of Budget.  *See id.* at ¶ 8.

Defendant Thomas P. DiNapoli is the Comptroller of the State of New York.  *See id.* at ¶ 9.

Defendant Gary Johnson was at the relevant time the Executive Director of the New York State

Governor's Office of Employee Relations ("GOER").  *See id.* at ¶ 10.

## B.      Collective Bargaining Agreement Negotiated Between the State and PEF in 2011

On November 3, 2011, PEF announced that its members ratified a four-year agreement

with the State.  *See* Dkt. No. 105 at ¶ 11.  The term of that agreement was April 2, 2011 through

April 1, 2015 (the "2011-15 CBA").  *See id.*

Section 9.2(h) of the 2011-15 CBA states as follows:

> The State agrees to pay 90 percent of the cost of the individual
> coverage and 75 percent of the cost of dependent coverage,
> including prescription drug coverage, provided under the Empire
> Plan.  Effective October 1, 2011 for employees in a title Salary
> Grade 9 or below (or an employee equated to a position title Salary
> Grade 9 or below), the State agrees to pay 88 percent of the cost of
> individual coverage and 73 percent of the cost of dependent
> coverage.  Effective October 1, 2011 for employees in a title Salary
> Grade 10 and above (or an employee equated to a position title
> Salary Grade 10 and above) the State agrees to pay 84 percent of
> the cost of individual coverage and 69 percent of the cost of
> dependent coverage.

*Id.* at ¶ 12.  Section 9.1 of the Agreement provides that "[t]he State shall continue to provide all

the forms and extent of coverage as defined by the contracts in force on April 1, 2011 with the

State's health insurance carriers unless specifically modified by this Agreement."  *Id.* at ¶ 13.

---

[2] The Court notes that Plaintiffs object to the assertion that Defendant Hite was Acting
Commissioner of the New York State Department of Civil Service.  *See* Dkt. No. 105 at ¶ 6.  The
same objection was raised and addressed by the Court in the Lead Case and will not be repeated
in the present matter.

Additionally, Section 9.12(a) of the 2011-15 CBA states that "[t]he unremarried spouse and otherwise eligible dependent children of an employee, who retires after April 1, 1979, with ten or more years of active State service and subsequently dies, shall be permitted to continue coverage in the health insurance program with payment at the same contribution rates as required of active employees for the same coverage." *Id.* at ¶ 16.

**C.    Collective Bargaining Agreements from 1982 to 2011**

The various collective bargaining agreements between the State and PEF from 1982 to 2011 contained substantially the same provisions as discussed above. *See* Dkt. No. 105 at ¶¶ 17-34. The 1982-85 CBA, however, provided that the State would "pay 100 percent of the cost of individual coverage and 75 percent of the cost of dependent coverage provided under the Statewide Plan[.]" *Id.* at ¶ 35; *see also* Dkt. No. 99-18 at § 9.1(b).

**D.    2011 Legislation to Implement Contribution Rate Changes for Health Insurance Premiums**

Prior to 2011, section 167(8) of the Civil Service Law provided, in relevant part, that the "state cost of premium or subscription charges for eligible employees" covered by a CBA "may be increased to the terms of such agreement." Dkt. No. 105 at ¶ 41 (citing Senate Bill 5846, Assembly Bill 8513). On August 17, 2011, section 167(8) was amended to read as follows:

> Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be modified pursuant to the terms of such agreement. The president, with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision.

*Id.* at ¶ 42.  Defendants contend that "[s]ection 167(8) was amended to implement the collectively bargained provisions of the CSEA 2011-16 CBA relating to health insurance contributions."  Dkt. No. 99-2 at ¶ 43.  Plaintiffs, however, contend that "[w]hile, on the surface, the stated purpose of the amendment to section 167(8) was supposed to be to implement the collectively bargained provisions of the CSEA 2011-16 CBA, that CSEA CBA contained no collectively bargained provisions for retirees, especially not for PEF retirees; and specifically did not provide for a new diminished State premium contribution for those who retired on or after January 1, 1983."  Dkt. No. 105 at ¶ 43.

## E.   Administrative Measures in 2011 Regarding Contribution Rates for Employee Health Insurance Premiums

By letter dated September 21, 2011, Defendant Hite notified Defendant Megna that she was extending, as authorized by Civil Service Law § 167(8), and subject to his approval, the modified State premium contribution rates set forth in Article 9 of the 2011-16 CSEA CBA, to unrepresented employees and retirees.  *See* Dkt. No. 99-22 at 2-3.  The letter was signed by Defendant Megna on September 22, 2011.  *See id.*

On September 27, 2011, Defendant Hite adopted a Resolution, citing to the authority vested in her in Civil Service Law sections 160(1), 161-a, and 167(8), which amended section 73.3(b) of Title 4 of the New York Code of Rules and Regulations.  *See* Dkt. No. 99-2 at ¶ 46 (citing Dkt. No. 99-23).  The Resolution contained the following provisions applicable to retirees:

> (i) for retirees who retired on or after January 1, 1983, and employees retiring prior to January 1, 2012, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;

6

(ii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 9 or below, New York State shall contribute 88 percent of the charge on account of individual coverage and 73 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan;

(iii) for employees retiring on or after January 1, 2012, from a title allocated or equated to salary grade 10 or above, New York State shall contribute 84 percent of the charge on account of individual coverage and 69 percent of the charge on account of dependent coverage, provided, however, that for hospital/medical/mental health and substance abuse coverage provided under a Health Maintenance Organization, the State's rate of contribution shall not exceed 100 percent of its dollar contribution for such coverage under the Empire Plan.

Dkt. No. 105 at ¶ 47; *see also* Dkt. No. 99-23 at 2-3 (emphasis omitted). The foregoing provisions were made effective October 1, 2011. *See id.* at ¶ 48. Defendant Hite also certified the necessity of adopting the proposed amendments on an emergency basis. *See id.* at ¶ 49.

**F.      Chapter 14 of the Laws of 1983**

In 1983, Civil Service Law § 167(8) was modified to provide that the full cost of health insurance premiums would be paid by the State for those who retired prior to January 1, 1983. *See* Dkt. No. 105 at ¶ 50. The 1983 law further provided that nine-tenths of the premium charged for health insurance would be paid by the State for current employees and those who retire on or after January 1, 1983. *See id.* at ¶ 51. The 1983 law was enacted to implement agreements reached through collectively bargaining, including an express agreement that the State would continue to pay 100% of the health insurance premium contributions for those who retired prior to January 1, 1983. *See id.* at ¶ 52.

**G.      Fiscal Crisis and Defendant Hite Acting as Head of the Department of Civil Service**

The Court will not repeat all of facts relating to the fiscal crisis facing the State in 2010 and 2011 or the parties' arguments relating to Defendant Hite acting as the head of the Department of Civil Service. Rather, the Court refers the parties to the discussion set forth in the accompanying Memorandum-Decision and Order from the Lead Case.

**H.      The Complaint and Pending Motion for Summary Judgment**

In their first cause of action, Plaintiffs allege that the increase in the percentage of the health insurance premium contribution paid by retirees violated the Contracts Clause of Article I, § 10 of the United States Constitution. *See* Dkt. No. 65 at ¶¶ 188-226. Defendants contend that the Court should dismiss this cause of action because the collective bargaining agreements do not establish a contractual right to a perpetually fixed health insurance premium contribution rates. *See* Dkt. No. 99-1 at 12-16. Further, Defendants argue that, even if Plaintiffs do have a vested right to a perpetually fixed premium contribution rate, they failed to demonstrate a substantial impairment of that right. *See id.* at 16-18. Moreover, Defendants contend that they are entitled to summary judgment on this claim because the law at issue served a legitimate public purpose and the means chosen to accomplish that purpose were reasonable and necessary. *See id.* at 19-23.

In their second cause of action, Plaintiffs allege that the 2011 amendment to Civil Service Law § 167(8) is unconstitutional, in violation of the Contracts Clause, as applied. *See* Dkt. No. 65 at ¶¶ 227-30. Defendants contend that this claim is duplicative of the first cause of action and should be dismissed. *See* Dkt. No. 99-1 at 23.

The third and sixth causes of action allege that the retirees' premium contribution increase violated Plaintiffs' right to due process under the Federal and State Constitutions. *See* Dkt. No. 65 at ¶¶ 231-40, 264-72. Defendants argue that these claims fail because Plaintiffs do not have a property interest in a perpetually fixed premium contribution rate and the New York State

Constitution does not provide for the cause of action Plaintiffs assert. *See* Dkt. No. 99-1 at 24-28, 30-32. Additionally, Defendants contend that, even if Plaintiffs had a property interest, the claim still fails because they had an adequate state-court remedy of which they failed to avail themselves. *See id.* at 28-30.

In their fourth cause of action, Plaintiffs allege that the increase in the percentage of the health insurance premium contribution paid by retirees breached Plaintiffs' contractual rights under the 2007-11 CBA. *See* Dkt. No. 65 at ¶¶ 241-52. Defendants contend that the Court should decline to exercise supplemental jurisdiction over this claim since there is no viable federal claim and that this claim should otherwise be dismissed because it lacks merit. *See* Dkt. No. 99-1 at 32-34.

The fifth cause of action alleges that Defendant Hite lacked the authority to administratively extend the premium shift. *See* Dkt. No. 65 at ¶¶ 253-63. Defendants claim that this cause of action "appears to be a claim under Article 78 of the New York Civil Practice Law and Rules and has been dismissed." Dkt. No. 99-1 at 9 (citing Dkt. No. 25 at 19-21).

In their seventh cause of action, Plaintiffs allege that Defendants Hite and Megna violated Article III, § 1 of the New York State Constitution. *See* Dkt. No. 65 at ¶¶ 273-77. Defendants argue that the Court should decline to exercise supplemental jurisdiction over this state law claim which, in any event, has no merit because Defendants Hite and Megna acted in accordance with the express terms of Civil Service Law § 167(8). *See* Dkt. No. 99-1 at 34-36.

Finally, in their eighth cause of action, Plaintiffs allege a separate cause of action under 42 U.S.C. § 1983. *See* Dkt. No. 65 at ¶¶ 278-82. Defendants contend that this claim must be dismissed because it is duplicative of the Contracts Clause and federal Due Process causes of action. *See* Dkt. No. 99-1 at 36.

# III. DISCUSSION

## A.     Standard of review

A court may grant a motion for summary judgment only if it determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the movant as a matter of law.  *See Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994) (citations omitted).  When analyzing a summary judgment motion, the court "cannot try issues of fact; it can only determine whether there are issues to be tried."  *Id.* at 36-37 (quotation and other citation omitted).  Moreover, it is well-settled that a party opposing a motion for summary judgment may not simply rely on the assertions in its pleading.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quoting Fed. R. Civ. P. 56(c), (e)).

In assessing the record to determine whether any such issues of material fact exist, the court is required to resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party.  *See Chambers*, 43 F.3d at 36 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)) (other citations omitted).  Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court must be satisfied that the citations to evidence in the record support the movant's assertions.  *See Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## B.     First Cause of Action: Contracts Clause of the United States Constitution

"The Contracts Clause restricts the power of States to disrupt contractual arrangements.  It provides that '[n]o state shall ... pass any ... Law impairing the Obligation of Contracts.'"  *Sveen v. Melin*, ___ U.S. ___, 138 S. Ct. 1815, 1821 (2018) (quoting U.S. Const., Art. I, § 10, cl. 1).

While the origins of the Clause lie in legislation enacted after the Revolutionary War to relieve debtors of their obligations to creditors, it applies to any kind of contract. *See id.* (citations omitted).

"At the same time, not all laws affecting pre-existing contracts violate the Clause." *Sveen*, 138 S. Ct. at 1822 (citing *El Paso v. Simmons*, 379 U.S. 497, 506-507, 85 S. Ct. 577, 13 L. Ed. 2d 446 (1965)). To determine when such a law crosses the constitutional line, the Supreme Court has long applied a two-step test. *See id.* "The threshold issue is whether the state law has 'operated as a substantial impairment of a contractual relationship.'" *Id.* at 1821-22 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S. Ct. 2716, 57 L. Ed. 2d 727 (1978)). "In answering that question, the Court has considered the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights." *Id.* at 1822 (citations omitted). "If such factors show a substantial impairment, the inquiry turns to the means and ends of the legislation. In particular, the Court has asked whether the state law is drawn in an 'appropriate' and 'reasonable' way to advance 'a significant and legitimate public purpose.'" *Id.* (quoting *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411-412, 103 S. Ct. 697, 74 L. Ed. 2d 569 (1983)).

Generally, "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." *Litton Financial Printing Div. v. N.L.R.B.*, 501 U.S. 190, 207 (1991) (citation omitted). "That principle does not preclude the conclusion that the parties intended to vest lifetime benefits for retirees." *M&G Polymers USA, LLC v. Tackett*, ___ U.S.___, 135 S. Ct. 926, 937 (2015). The Supreme Court has specifically "recognized that 'a collective-bargaining agreement [may] provid[e] in explicit terms that certain benefits continue after the agreement's

expiration.'" *Id.* (quotation omitted). "But when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." *Id.* The court "must look to well established principles of contract interpretation to determine whether the parties intended that the contract give rise to a vested right." *Kolbe v. Tibbetts*, 22 N.Y.3d 344, 353 (2013); *see also Litton*, 501 U.S. at 207.

Central to the Court's analysis here is the United States Supreme Court's decision in *M & G Polymers USA, LLC v. Hobert Freel Tackett*, ___U.S.___, 135 S. Ct. 926 (2015). *Tackett* involved an open-ended CBA provision for retiree insurance benefits that the Sixth Circuit found ambiguous as to duration. *See id. at* 934. The appellate court applied the reasoning of an earlier Sixth Circuit decision, *International Union, United Auto., Aerospace & Agricultural Implement Workers of America v. Yard–Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983), drawing inferences from the "context" of labor negotiations to resolve the contractual ambiguity. *Id.* at 932 (citing *Tackett v. M & G Polymers, USA, LLC (Tackett I)*, 561 F.3d 478, 490 (6th Cir. 2009)). Although the CBA contained a general durational clause, the Sixth Circuit found it "unlikely" that the employees' union would have agreed to CBA language that ensured a full company contribution if the employer could have unilaterally changed those terms. *See id.* (citing *Tackett I*, 561 F.3d at 490)). The Sixth Circuit therefore found the existence of a question of fact as to whether the retiree benefits vested for life. *See id.*

The Supreme Court disagreed. Writing for the majority, Justice Thomas stated that contractual provisions in CBAs are to be enforced as written and interpreted in accordance with "ordinary principles of contract law, at least when those principles are not inconsistent with federal labor policy." *Id.* at 933. As with any contract, "the parties' intentions control." *Id.* (citing *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S. Ct. 1758, 176 L.

Ed. 2d 605 (2010)). Where the terms of the contract are unambiguous, it is to be construed "in accordance with its plainly expressed intent." *Id.* (quoting 11 R. Lord, Williston on Contracts § 30:6, p. 108 (4th ed. 2012) (Williston)). Courts may not speculate as to the intentions of employees, unions, and employers in negotiating retiree benefits, but must ground their assessments on record evidence. *See id.* at 935. Thus, courts may consider certain known customs or industry usages to construe a contract, but "the parties must prove those customs or usages using affirmative evidentiary support in a given case." *Id.* (citing 12 Williston § 34:3).

When faced with ambiguous language, the Supreme Court advised that courts "should not construe ambiguous writings to create lifetime promises." *Id.* at 936 (citing 3 A. Corbin, Corbin on Contracts § 533, p. 216 (1960)). Rather, courts should be guided by the "traditional principle that 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.'" *Id.* at 937 (quoting *Litton Fin. Printing Div., Litton Bus. Sys., Inc. v. NLRB*, 501 U.S. 190, 207, 111 S. Ct. 2215, 115 L. Ed. 2d 177 (1991)). While a CBA may explicitly provide that certain terms continue after the agreement's expiration, when a contract fails to address the duration of retiree benefits, "a court may not infer that the parties intended those benefits to vest for life." *Id.*

In her concurring opinion, Justice Ginsburg expounded upon Justice Thomas' adherence to fundamental principles of contract law, stating that when the parties' intent is unambiguously expressed in the contract, that intent controls, and the court's analysis should go no further. *See id.* at 938 (Ginsburg, J., concurring) (citing 11 R. Lord, Williston on Contracts § 30:2, p. 98–104) (4th ed. 2012) (Williston)). When faced with ambiguity, however, courts may consider extrinsic evidence to determine the parties' intentions. *See id.* (citing 11 Williston § 30:7, at 116–24). Justice Ginsburg further observed that there is no rule requiring "clear and express" language in

order to demonstrate that the parties intended healthcare benefits to vest. *Id.* Rather, "'constraints upon the employer after the expiration date of a collective-bargaining agreement,' we have observed, may be derived from the agreement's "explicit terms," but they 'may arise as well from ... implied terms of the expired agreement.'" *Id.* (alterations in original) (quoting *Litton*, 501 U.S. at 203, 207, 111 S. Ct. 2215).[3]

"Although a contract's general-durational clause does not say everything about the parties' intent to vest a benefit, *Tackett v. M & G Polymers USA, LLC*, 811 F.3d 204, 209 (6th Cir. 2016) (*Tackett III*), it certainly says a lot." *Serafino v. City of Hamtramck*, 707 Fed. Appx. 345, 352 (6th Cir. 2017). "So, '[w]hen a specific provision of the CBA does not include an end date, [the court] refer[s] to the general durational clause to determine that provision's termination.'" *Id.* (quoting *Gallo v. Moen, Inc.*, 813 F.3d 265, 269 (6th Cir. 2016)). "Absent some strong indication within the four corners of the agreement itself — perhaps, a specific-durational clause that applied to certain provisions but not others — the contractual rights and obligations under a CBA terminate along with the CBA." *Id.* (citing *Tackett*, 135 S. Ct. at 937).

In the present matter, the Court finds that the unambiguous terms of the CBAs at issue did not create a vested interest in the perpetual continuation of premium contribution rates at a

---

[3] Of course, *Tackett* arose in a different context than the claims presented here. Specifically, those cases were brought under *ERISA*, which governs relationships and agreements between private employees and their employees but excludes public employers and employees, like Plaintiffs here. *See* 29 U.S.C. § 1003(b)(1). Thus, what rights exist under the CBAs at issue here is determined by New York contract law. Yet, despite the different setting, courts have endorsed *Tackett*'s reasoning in both the private and public-sector context. *See Serafino*, 707 Fed. Appx. at 352 (citing cases); *Baltimore City Lodge No. 3 of Fraternal Order of Police, Inc. v. Baltimore Police Dept.*, No. 1:16-cv-3309, 2017 WL 3216775 (D. Md. July 28, 2017); *Kendzierski v. Macomb County*, 901 N.W.2d 111, 114-15 (Mich. 2017); *Township of Toms River v. Fraternal Order of Police Lodge No. 156*, 2016 WL 1313174 (N.J. Sup. Ct. Mar. 16, 2016); *Harper Woods Retirees Ass'n v. City of Harper Woods*, 879 N.W.2d 897 (Mich. Ct. of App. 2015).

specific level. Plaintiffs rely primarily on Sections 9.1, 9.2(h), and 9.12(a) of PEF's 2007-11 and

2011-16 CBAs, and similar provisions of prior CBAs going back to 1983.

Section 9.1 of the 2007-11 CBA provides that "[t]he State shall continue to provide all the

forms and extent of coverage as defined by the contracts in force on April 1, 2007 with the State's

health insurance carriers unless specifically modified by this Agreement." Dkt. No. 99-11 at 3.[4]

Primarily, Plaintiffs contend that the terms "forms and extent of coverage" are ambiguous.

Plaintiffs reliance on this provision is misplaced. The introductory language simply establishes

that the coverage in the previous CBA, to the extent it is defined in the contracts between the

State and the insurance carriers, will continue unless altered through negotiations. Therefore,

what is continued are the benefits defined in the contracts with the insurance carriers, not the

premium contribution rate paid by the State.

Plaintiffs also contend that the State and PEF utilized the contract language "coverage"

and "health insurance coverage" "to mean, include and refer to the fixed premium share or

subscription cost contribution percentage to be paid by the State." Dkt. No. 105-1 at 11. In

making this argument, Plaintiffs generally rely on contracts between the State and the insurance

carriers. As Defendants correctly contend, however, the contracts between the State and the

insurance carriers generally do not reference contribution rates. *See* Dkt. No. 108-1 at ¶¶ 15, 19-

20. These contracts make clear that the terms "coverage" and "premium" have very distinct

---

[4] Section 9.2(h) provides that "[t]he State agrees to pay 90 percent of the cost of the individual coverage and 75 percent of the cost of dependent coverage, including prescription drug coverage, provided under the Empire Plan." Dkt. No. 99-11 at 8. Section 9.12(a) provides that "[t]he unremarried spouse or domestic partner who has not acquired another domestic partner and otherwise eligible dependent children of an employee, who retires after April 1, 1979 with 10 or more years of active State service and subsequently dies, shall be permitted to continue coverage in the Health Insurance Program with payment at the same contribution rates as required of active employees for the same coverage." *Id.* at 14.

meanings.  Indeed, the Court is unaware of any case in which the Court equated the term "coverage" with "premium."

Additionally, to the extent that "continue" is read to mean continuation after the expiration of the CBA, the term "coverage" can only naturally be referring to the coverage that is defined in the "contracts" with "the State health and dental insurance carriers."  The State promised to continue to provide "coverage," not as defined in the prior CBA, but in the State's contracts with the insurance carriers that provide coverage to State employees.

As discussed in more detail in the Lead Case, all of the CBAs at issue had general durational clauses.  The sections of these CBAs, and all previous CBAs, providing for health insurance in retirement and setting forth the State's premium contribution rate do not contain any language pertaining to duration.  As the Supreme Court has made clear that "'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement,'" *CNH Indus. N.V.*, 138 S. Ct. at 763 (quotations omitted), and that "when an agreement does not specify a duration for health care benefits in particular," courts should "simply apply the general durational clause." *Id.* at 766 (citations omitted).

The only reasonable interpretation of the unambiguous language of the CBAs is that the premium contribution rates are subject to the general durational clauses and that this obligation ceased upon the termination of each respective CBA. *See Gallo*, 813 F.3d at 269-70 (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 207 (1991)); *see also Serafino*, 707 Fed. Appx. at 352-53 ("Looking to the four corners of the agreements, there is no indication that the City intended to provide *any* healthcare benefit to retirees for life, let alone a right to deductible-free, low-co-pay, forever-unalterable healthcare insurance") (emphasis in original).  This conclusion is further supported by the legislation passed in 1983 providing that the State would continue to pay

the full premium for pre-January 1, 1983 retirees. If retirees had a contractually vested perpetual right to the same contribution rates in effect at the time of their retirement, there would have been no need for an affirmative legislative carve-out specifically applicable to them.

Based on the foregoing, the Court finds that there was no contractual agreement regarding premium contribution rates continuing past the expiration of the CBA. As such, the Court grants Defendants' motion for summary judgment as to Plaintiffs' Contract Clause claim. In an excess of caution, however, the Court finds that, for all of the reasons set forth in the Court's Memorandum-Decision and Order in the Lead Case, even if such a contractual agreement existed, Defendants' actions did not substantially impair any such agreement and, if there was such a substantial impairment, it was a reasonable and necessary means to serve a legitimate public purpose. *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102 at 26-32.

**C.      Second Cause of Action: As Applied Challenge to L. 2011 Ch. 491**

In their second cause of action, Plaintiffs allege that L. 2011 Ch. 491, as applied to them, violates the Contracts Clause. As Defendants correctly contend, this cause of action is duplicative of their first cause of action. As such, for the reasons set forth above, the Court grants Defendants' motion for summary judgment as to Plaintiffs' second cause of action.

**D.      Third and Sixth Causes of Action: Due Process Clause**

Plaintiffs third and sixth causes of action allege that the retirees' premium contribution increase violated Plaintiffs' right to due process under the Federal and State Constitutions. *See* Dkt. No. 65 at ¶¶ 231-40, 264-72. Defendants argue that these claims fail because Plaintiffs do not have a property interest in a perpetually fixed premium contribution rate and the New York State Constitution does not provide for the cause of action Plaintiffs assert. *See* Dkt. No. 99-1 at 24-28, 30-32. Additionally, Defendants contend that, even if Plaintiffs had a property interest, the

claim still fails because they had an adequate state-court remedy of which they failed to avail themselves.  *See id.* at 28-30.

The Fourteenth Amendment provides, in relevant part, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. In order to demonstrate a violation of either substantive or procedural due process rights, the plaintiff must first demonstrate the possession of a federally protected property right to the relief sought.  *See Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 236 (E.D.N.Y. 2009) (citing *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999)).  Property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 577 (1972) (holding that the plaintiff must have more than a unilateral expectation; the plaintiff must have a legitimate claim of entitlement to the benefit).  The Second Circuit has held that, "[i]n order for a person to have a property interest in a benefit such as the right to payment under a contract, [h]e must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it." *Local 342, Long Island Pub. Serv. Emp., UMD, ILA, AFLCIO v. Town Bd. of the Town of Huntington*, 31 F.3d 1191, 1194 (2d Cir. 1994) (citations omitted).  "When determining whether a plaintiff has a claim of entitlement, we focus on the applicable statute, contract or regulation that purports to establish the benefit." *Martz v. Vill. of Valley Stream*, 22 F.3d 26, 30 (2d Cir.1994).

"Courts have determined that in appropriate circumstances, contractual rights arising from collective bargaining agreement give rise to constitutional property right." *Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 341 (E.D.N.Y. 2009) (citing *Ciambriello v. Cty. of Nassau*, 292

F.3d 307, 314 (2d Cir. 2002). A "property interest in employment can be created by ordinance or state law." *Winston v. City of New York*, 759 F.2d 242, 247 (2d Cir. 1985) (holding that the plaintiffs' benefits were found in the New York State Constitution and vested in the plaintiffs by the terms of a statutory scheme). The Second Circuit has held that, "[i]n determining whether a given benefits regime creates a property interest protected by the Due Process Clause, we look to the statutes and regulations governing the distribution of benefits." *Kapps v. Wing*, 404 F.3d 105, 113 (2d Cir. 2005) (citation omitted). "Where those statutes or regulations meaningfully channel official discretion by mandating a defined administrative outcome, a property interest will be found to exist." *Id.* (citation omitted). Courts in this circuit have held that statutory framework may create a property interest. *See Kapps*, 404 F.3d at 104; *see also Basciano v. Herkimer*, 605 F.2d 605 (2d Cir. 1978) (holding that the city administrative code created a property right in receipt of accident disability retirement benefits, where the code required officials to give benefits to applicants who met specified criteria); *see also Winston*, 759 F.2d at 242; *Sparveri v. Town of Rocky Hill*, 396 F. Supp. 2d 214, 218 (D. Conn. 2005) (noting that the plaintiff claimed that her entitlement to the level of pension and healthcare benefits was rooted in the statutory pension scheme established by the Town Charter and Plan ordinance).

"The Due Process Clause does not protect against all deprivations of constitutionally protected interests in life, liberty, or property, 'only against deprivations without due process of law.'" *Rivera-Powell v. New York City Bd. of Elections*, 470 F.3d 458, 464-65 (2d Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 537, 101 S. Ct. 1908, 68 L. Ed. 2d 420 (1981) (internal quotation marks omitted), *overruled in part on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986)). "The commonsense principle at the heart of the due process guarantees in the United States and New York Constitutions is that when the

State seeks to take life, liberty or property from an individual, the State must provide effective procedures that guard against an erroneous deprivation." *People v. David W.*, 95 N.Y.2d 130, 136 (2000) (citing U.S. Const., Amend. XIV, § 1; N.Y. Const., art. I, § 6; *Mathews v. Eldridge*, 424 U.S. 319, 334-335, 96 S. Ct. 893, 47 L. Ed. 2d 18; *Wisconsin v. Constantineau*, 400 U.S. 433, 436, 91 S. Ct. 507, 27 L. Ed. 2d 515). A state may satisfy due process with either pre-deprivation remedies or post-deprivation remedies. *See Rivera-Powell*, 470 F.3d at 465 (citation omitted).

In the present matter, the Court finds that Defendants are entitled to summary judgment as to Plaintiffs' due process claims because Plaintiffs had an adequate state court remedy available to them. Through the passage of the amendments to section 167(8) of the Civil Service Law and the Resolution passed by Defendant Hite amending section 73.3(b) of Title 4 of the New York Code of Rules and Regulations, Plaintiffs had notice of the changes to their health insurance contribution rates about to take effect. It is well settled that an Article 78 proceeding generally provides constitutionally adequate post-deprivation process. *See Campo v. N.Y.C. Emps. Ret. Sys.*, 843 F.2d 96, 102 (2d Cir. 1988); *Minima v. N.Y.C. Emps. Ret. Sys.*, No. 11-cv-2191, 2012 WL 4049822, *6 (E.D.N.Y. Aug. 17, 2012).[5]

Even assuming that the availability of an Article 78 proceeding did not preclude Plaintiffs' due process claims, they are nevertheless still subject to dismissal. While it is true that collective bargaining agreements can be the source of a property right entitled to due process protection, "not every contractual benefit rises to the level of a constitutionally protected property interest." *Ezekwo v. N.Y.C. Health & Hosps. Corp.*, 940 F.2d 775, 782 (2d Cir. 1991). It has been observed

---

[5] The Court notes that Plaintiffs' response did not address Defendants' argument that their due process claim is precluded because of the availability of constitutionally adequate post-deprivation process through an Article 78 proceeding. *See* Dkt. No. 105-1 at 24. In fact, Plaintiffs' response to this aspect of Defendants' motion is only three sentences in length and does not cite to any relevant case law. *See id.*

that "when federal courts find that a CBA or other nonstatutory source has created a protectable property interest, 'typically it is because the CBA, or the employer's explicitly stated policies, virtually guaranteed that the employee would enjoy some particular, significant benefit, or that the employee would not be disciplined without cause.'" *Dohrmann-Gallik v. Lakeland Cent. Sch. Dist.*, No. 14-cv-4397, 2015 WL 4557373, *3 (S.D.N.Y. July 27, 2015) (quoting *MacFall v. City of Rochester*, 746 F. Supp. 2d 474, 483 (W.D.N.Y. 2010), *aff'd*, 495 Fed. Appx. 158 (2d Cir. 2012)). "Generally, the types of contractual benefits that are protected by the Due Process Clause are those bearing a quality or character of 'extreme dependence,' as in the case of welfare benefits, or 'permanence,' as in the case of loss of public employment." *Id.* (citing *S & D Maint. Co. v. Goldin*, 844 F.2d 962, 966 (2d Cir. 1988); *Danese*, 827 F. Supp. at 191-92).

Here, as discussed above, Plaintiffs have failed to identify a term in any of the CBAs guaranteeing premium contributions at a fixed rate in perpetuity. Plaintiffs fail to cite to anything other than their own subjective belief that they had a right to fixed premium contribution rates in retirement. As the Supreme Court has made clear, however, a mere "subjective 'expectancy'" is not protected by procedural due process. *See Perry v. Sinderman*, 408 U.S. 593, 603 (1972). Additionally, the Court notes that courts have been reluctant to find a property interest premised on a benefit conferred by a public contract unless that benefit has been denied entirely. *See Jackson v. Roslyn Bd. of Educ.*, 652 F. Supp. 2d 332, 341-43 (E.D.N.Y. 2009); *Lawrence v. Town of Irondequoit*, 246 F. Supp. 2d 150, 156-57 (W.D.N.Y. 2002).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiffs' due process causes of action.

**E.      Fourth Cause of Action: Breach of Contract**

"The essential elements of a breach of contract cause of action are 'the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach.'" *Canzona v. Atanasio*, 118 A.D.3d 837, 838-39 (2d Dep't 2014) (quotation and other citations omitted).  "Generally, a party alleging a breach of contract must 'demonstrate the existence of a . . . contract reflecting the terms and conditions of their . . . purported agreement.'" *Id.* at 839 (quotations omitted).  "Moreover, 'the plaintiff's allegations must identify the provisions of the contract that were breached.'" *Id.* (quotation and other citation omitted).

In the present matter, in dismissing Plaintiffs' Contract Clause cause of action, the Court held that there was no impairment of contract, *i.e.*, that the CBAs at issue did not promise Plaintiffs a perpetual premium contribution rate.  It necessarily follows that Defendants did not breach this nonexistent contract term.

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiffs' fourth cause of action.

## F.     **Fifth Cause of Action: *Ultra Vires***

The fifth cause of action alleges that Defendant Hite lacked the authority to administratively extend the premium shift.  *See* Dkt. No. 65 at ¶¶ 253-63.  Plaintiffs claim that the office of the President of the Civil Service Commission was, at all relevant times, that no one had been designated as "Acting President," and Defendant Hite has not otherwise performed the duties of Acting President.  *See id.*  As set forth in more detail in the Lead Case, Plaintiffs' arguments are without merit.  *See Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102 at 42-45.

Section 9 of the New York State Public Officers Law provides in relevant part as follows:

> If there is but one deputy, he shall, unless otherwise prescribed by
> law, possess the powers and perform the duties of his principal
> during the absence or inability to act of his principal, or during a
> vacancy in his principal's office.  If there be two or more deputies
> of the same officer, such officer may designate, in writing, the order in
> which the deputies shall act, in case of his absence from the office
> or his inability to act, or in case of a vacancy in the office, and if he
> shall fail to make such designation, the deputy longest in office
> present shall so act.

N.Y. Pub. Off. Law § 9.  Immediately prior to her resignation as Commissioner of the Department of Civil Service, Nancy Groenwegen filed a form entitled "Designation of Deputy" that designated Patricia Hite to possess the Commissioner's powers and perform the Commissioner's duties during the vacancy in the Commissioner's office.  On that same date, Defendant Hite submitted a form entitled "Public Officer Oath/Affirmation" that was filed with the Department of State as required.  Upon Nancy Groenwegen's resignation, Defendant Hite was authorized to perform the duties of the Commissioner of the Department of Civil Service and President of the Civil Service Commission until her replacement was appointed by the Governor.  *See* N.Y. Pub. Off. Law § 9; N.Y. Civ. Serv. Law §§ 5, 7; *see also* Office of the Attorney General, Formal Opinion No. 250 dated Oct. 15, 1941, 1941 WL 52436 (1941) (finding that, upon a vacancy in the Office of State Comptroller, pending an appointment of a temporary Comptroller, the duties of the office may be performed by a deputy qualifying under section 9 of the Public Officers Law).

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiffs' fifth cause of action.

## G. Seventh Cause of Action: Violation of Article III, § 1 of the New York Constitution

In their sixth cause of action, Plaintiffs allege that Defendants Hite and Megna violated Article III, § 1 of the New York State Constitution when they extended the premium contribution changes to retirees pursuant to the authority granted in section 167(8) of the Civil Service Law.

Defendants contend that this claim has no merit because Defendants Hite and Megna acted in accordance with the express terms of section167(8).  *See* Dkt. No. 99-1 at 34-36.

Article III, § 1 of the New York State Constitution states that "[t]he legislative power of this state shall be vested in the senate and assembly."  "'The concept of the separation of powers is the bedrock of the system of government adopted by this State in establishing three coordinate and coequal branches of government, each charged with performing particular functions.'" *Garcia v. N.Y.C. Dep't of Health & Mental Hyg.*, ___ N.Y.3d___, 2018 WL 3147611, *3 (2018) (quotations omitted).  "This principle, 'implied by the separate grants of power to each of the coordinate branches of government, requires that the Legislature make the critical policy decisions, while the executive branch's responsibility is to implement those policies.'" *Id.* (quotation and other citation omitted).

Section 167(8) of the Civil Service Law provides as follows:

> Notwithstanding any inconsistent provision of law, where and to the extent that an agreement between the state and an employee organization entered into pursuant to article fourteen of this chapter so provides, the state cost of premium or subscription charges for eligible employees covered by such agreement may be modified pursuant to the terms of such agreement.  The president, with the approval of the director of the budget, may extend the modified state cost of premium or subscription charges for employees or retirees not subject to an agreement referenced above and shall promulgate the necessary rules or regulations to implement this provision.

N.Y. Civ. Serv. Law § 167(8).  Defendants Hite and Megna cited to this provision in extending the increase in health insurance contribution rates to retirees.

In their response to Defendants' motion, Plaintiffs fail to identify any way in which Defendants Hite or Megna exceeded the authority granted to them by the Legislature.  *See* Dkt. No. 105-1 at 25-26.  Rather, Plaintiffs first incorrectly argue that retirees are subject to collective

bargaining agreements. *See id.* at 25. Plaintiffs also argue that Defendant Hite did not extend the premium shift to retirees, but rather increased retirees' premium share. *See id.* at 25.26. Plaintiffs, however, fail to explain how this is a violation of Article III, Section 1 of the New York Constitution. Contrary to Plaintiffs' assertions, Defendants Hite and Megna were authorized to apply the premium shift to retirees, "[n]otwithstanding any inconsistent provision of law." N.Y. Civ. Serv. Law § 167(8). Defendants Hite and Megna acted consistent with this authority.

To the extent that Plaintiffs are attempting to argue that section 167(8) is an unconstitutional delegation of legislative authority, their argument is unpersuasive. In *Retired Public Employees Assoc., Inc. v. Cuomo*, 123 A.D.3d 92 (3d Dep't 2014), the plaintiffs argued that Civil Service Law § 167(8) constituted an unconstitutional delegation of legislative authority. *See id.* at 97. Rejecting this argument, the Third Department held that

> the power given to the Civil Service Commission, with the approval of the Budget Director, to modify health insurance contribution rates for retirees and non-represented state employees is entirely dependent upon – and limited by the terms of – a negotiated agreement between the state and an employee organization modifying the contribution rates for current employees. . . . Contrary to petitioners' contention, the standard set forth by the Legislature – that any change in the retiree statutory contribution rate must be tied to a collectively bargained rate – provides adequate guidance for the exercise of that discretion, as "there need not be a specific and detailed legislative expression authorizing a particular executive act [where, as here,] the basic policy decisions underlying the [actions authorized] have been made and articulated by the Legislature."

*Id.* at 97-98 (quotation and other citation omitted). The Third Department also rejected the plaintiffs' claim that section 167 was internally inconsistent to the extent that section 167(1)(a) imposes a fixed contribution rate for retiree health insurance. *See id.* at 95. The court held that, considering the statute as a whole, section 167(8) plainly and unambiguously permits modification of the fixed contribution rates for health insurance premiums set forth in Civil

Service Law § 167(1)(a). *See id.* The court noted that section 167(8) "begins with the phrase '[n]otwithstanding any inconsistent provision of law,' which is a 'verbal formulation frequently employed for legislative directives intended to preempt any other potentially conflicting statute, wherever found in the [s]tate's laws.'" *Id.* (quotation and other citation omitted). "Thus, while Civil Service Law § 167(1)(a) provides for a fixed percentage contribution, the explicit command of the Legislature in Civil Service Law § 167(8) makes clear that the former provision does not apply where it would otherwise conflict with Civil Service Law § 167(8)." *Id.*

Based on the foregoing, the Court grants Defendants' motion for summary judgment as to Plaintiffs' sixth cause of action.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** Defendants' motion for summary judgment (Dkt. No. 99) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall attach a copy of the decision in the Lead Case (*Donohue v. Cuomo*, No. 1:11-cv-1530, Dkt. No. 102) to this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance in the Local Rules.

**IT IS SO ORDERED.**

Dated: September 24, 2018
　　　　Albany, New York

Mae A. D'Agostino
U.S. District Judge